## TYLER *v.* STATE OF INDIANA.

[No. 1067S98. Filed May 21, 1968.]

Ralph W. Probst, and Probst & Probst, of Kendallville, for appellant.

John J. Dillon, Attorney General, and Murray West, Deputy Attorney General, for appellee.

LEWIS, C. J.—This is an appeal from a conviction of the appellant for the crime of Second-Degree Burglary. In the Trial Court the defendant had entered a plea of not guilty and not guilty by reason of insanity. The case was heard by the Trial Court without the intervention of a jury.

On the night of January 5, 1967, the Wolcottville School building was burglarized. Certain portions of the school building had been forcibly entered and several payroll checks to school employees, as well as a money bag, were taken.

At about 2:30 A.M. on January 6, 1967, the appellant had an auto collision near the burglarized school. His car was damaged to such a degree that it was removed to a garage. At about 6:00 A.M., a State Trooper was in the Police Station at Avilla which is also in the vicinity of the school which was burglarized. While there, he saw the appellant and became aware that he had been involved in an auto collision. At 7:30 A.M. on the same morning, the State Trooper received infor-

mation that the Wolcottville School had been burglarized, and that the burglary had taken place prior to 5:30 A.M. on that same day. At 8:00 A.M., the State Trooper made an examination of the appellant's wrecked automobile, whereupon he observed the money bag lying on the front seat partially hidden by a man's jacket and he observed tools in the back of the car. The Trooper testified that at the time he took the money bag from the car, he believed the bag belonged to the appellant's father. At 1:00 P.M. on the same day he obtained a search warrant and removed the tools from the car, claiming they were possible burglary tools.

The appellant was arrested at approximately 8:30 P.M. on January 6, 1967, by the Town Marshal of Monroeville. The appellant told the Marshal that the stolen checks were in the glove compartment of the car that he was driving at the time of his arrest, and the Marshal removed the checks. The appellant signed a statement admitting that he committed the burglary.

On appeal, appellant raises three (3) assigned errors:

1. That the Trial Court erroneously admitted the money bag into evidence because it was the product of an illegal search.
2. That the Trial Court erroneously admitted into evidence the alleged burglary tools because the search warrant by which they were obtained was not introduced into evidence.
3. That the Trial Court's appointment of Doctors Mellinger and Taylor to examine the witness, in regard to his plea of insanity, and to testify at the trial, constituted error because neither were psychologists or psychiatrists.

Appellant's assigned errors Nos. 1 and 2 will be dealt with together. The appellant objected to both the money bag and the alleged burglary tools coming into evidence, but, on improper grounds.

The objection to the money bag was raised as follows:

"We object, your honor, to this exhibit being admitted through the testimony of this particular witness."

The objection to the alleged burglary tools from being entered into evidence was raised thusly:

"To which the defendant objects as to Exhibit No. 9 because the witness says it looks like the same one he removed from the defendant's car, and that he failed to mark it for identification. We would object to the introduction of State's Exhibits Nos. 4, 5, 6, 7, 8, and 9 for the reason that there is no foundation laid by the State of Indiana to show that these particular exhibits were in any way connected with the commission of the alleged crime and that they are irrelevant and immaterial and no foundation has been laid by the State for their admission."

It is manifest that the appellant is now raising entirely different questions than those he raised at the time the evidence was admitted at trial.

In the case of *Gernhart* v. *State* (1954), 233 Ind. 470, 120 N. E. 2d 265, the following statement appears:

". . . 'In the trial court, appellant made no objection on the ground which he now asserts and relies upon, to the evidence which was offered and received. A party who objects to the admission of evidence must state or point out to the trial court with reasonable certainty the specific grounds of his objection, and, when such grounds are stated, the implication is that there are not others or, if others, that they are waived. *Howard* v. *State* (1921), 191 Ind. 232, 242, 131 N. E. 403; *Bass* v. *State* (1894), 136 Ind. 165, 171 N. E. 124. If the evidence is received over such objection, an appellant cannot, in the court of appeal, urge, for the first time, other or different objections, . . .' " Quoting with authority from *Heyverests* v. *State* (1931), 202 Ind. 359, 362, 174 N. E. 710.

We are compelled to hold that since the appellant failed to object at trial for the same reasons now being urged, he is deemed to have waived his alleged errors. One may not raise objections for the first time on appeal in this Court when there was afforded an ample opportunity to raise the objection during the course of the trial. See also: *Dull* v. *State* (1962), 242 Ind. 633, 180 N. E. 2d 523.

We now turn to appellant's last assigned error concerning the Court's appointment of two physicians to serve as expert witnesses on the issue of the appellant's insanity at the time the crime was committed. It is appellant's argument that since these witnesses were physicians primarily, and not specialists in the fields of mental disorders that they were not competent to render an opinion on the appellant's sanity.

Appellant cites Burns' Indiana Statutes, Anno., § 9-1702, (1956 Replacement), which reads as follows:

> "At the trial of such cause, evidence may be introduced to prove the defendant's present sanity or insanity, or his sanity or insanity at the time at which he is alleged to have committed the act charged in the indictment or affidavit. When an insanity defense is pleaded, the court shall appoint two [2], or three [3], competent disinterested physicians to examine the defendant, and to testify at the trial. Such testimony shall follow the presentation of the evidence for the prosecution and for the defense, including testimony of medical experts employed by the state and by the defense, if any. The medical witnesses appointed by the court may be cross-examined by both the prosecution and the defense, and each side may introduce evidence in rebuttal to the testimony of such medical witnesses."

He points out the language ". . . competent disinterested physicians . . . ", and interprets this to mean an individual with more training, experience, and qualifications than a general practicing physician without specialized training.

Appellant is correct in his belief that competent experts are necessary in the determination of an individual's sanity; however, we do not believe that the statute envisions the standard to qualify as an expert witness as appellant suggests.

The law is well settled that physicians may testify as experts in situations such as these. In the case of *Davis* v. *State* (1871), 35 Ind. 496, the following statement appears:

> "Two physicians were introduced and examined, on behalf of the State, as rebutting witnesses on the subject of insanity. It is urged by the defendant that they are not

shown to be sufficiently conversant with insanity to entitle them to be regarded and examined as experts. One of them had been practicing his profession for fifteen, and the other for twenty-five, years, and they had each given the subject of medical jurisprudence some attention, by reading works on the subject and by attending lectures.

"We think they were competent to testify on the subject, as experts. 'Insanity being deemed a disease, it is believed to be the general custom of our American judges, throughout the country, to accept of all educated and practicing physicians as experts, whether they have given special attention to the disease of insanity or not.' I Bishop Crim. Law, Sec. 544. The witnesses in this case however, had, in addition to their medical studies, given some attention to the subject of insanity. See *Baxter* v. *Abbott*, 7 Gray, 71. The extent of the witness' acquaintance with the subject may always be inquired into, to enable the jury to estimate the weight of his evidence. Whether he is competent to testify at all as an expert, is a question for the court. But after he has been allowed to testify, the weight of his evidence is a question for the jury." See also: *Weaver* v. *State* (1966), 247 Ind. 315, 215 N. E. 2d 533.

There was evidence introduced at trial which indicated that Dr. Taylor had taken continuing courses in psychiatry for three and one-half (3½) years in medical school. Also, he had helped to diagnose and treat patients at LaRue Carter, a mental hospital.

Dr. Mellinger stated he had training in psychiatry in medical school as well, and during his internship he had responsibility for determining the mental status of patients in a hospital.

Neither of these witnesses were strangers to mental illness, and we cannot now say that they were incompetent to testify. The question of whether a witness is qualified to testify as an expert is in the discretion of the Trial Court which may not be set aside unless there is a manifest abuse of discretion. We see none. *Dougherty* v. *State* (1934), 206 Ind. 678, 191 N. E. 84.

The appellant has not demonstrated error at law committed by the Trial Court, and we affirm.

Arterburn, Hunter and Jackson, JJ., concur; Mote, J., not participating.

NOTE.—Reported in 236 N. E. 2d 815.