## SMITH v. STATE OF INDIANA.

[No. 767S44. Filed July 15, 1969. No Petition for Rehearing filed.]

426

*Nick J. Thiros,* Gary, for appellant.

*John J. Dillon,* Attorney General, *Michael V. Gooch,* Deputy Attorney General, for appellee.

GIVAN, J.—This is an appeal from a conviction of murder in the second degree following trial by jury in the Lake Criminal Court. The appellant was sentenced to the Indiana State Prison for the remainder of his natural life.

Following his conviction the appellant filed a motion for new trial *pro se,* which was overruled by the Court.

Counsel appointed by the court to perfect appellant's appeal filed an assignment of errors averring that the Court erred in overruling appellant's motion for new trial. He subsequently filed a supplemental assignment of errors wherein he sets out additional alleged error by the trial court.

An examination of the supplemental assignment of errors discloses matters which were or could have been covered by the motion for new trial. We, therefore, could confine our examination of this case to the grounds raised in the motion for new trial and the assigned error that the court erred in overruling the same. *Groce v. State* (1968), 250 Ind. 582, 14 Ind. Dec. 233, 236 N. E. 2d 597, Rule 2-6, Rules Indiana Supreme Court.

In the *Groce* case this Court recognized an exception to the foregoing rule, citing *Hayden v. State* (1964), 245 Ind. 591, 599, 3 Ind. Dec. 492, 199 N. E. 2d 102, 3 Ind. Dec. 753, 201 N. E. 2d 329. In the *Hayden* case the Court said:

"Such errors may not ordinarily be presented for the first time in the assignment of errors on appeal to this court, although conceivably a possible exception to the rule might be made where the error appears as a matter of record and is of such a nature that this court can take judicial knowledge that such error being present, the appellant could not, under any circumstances, have had a fair trial."

Appellant urges that the exception in the *Hayden* case should be extended to this case for the reason that trial counsel did not file a Motion for New Trial for appellant and that appellant was forced to file his motion *pro se*. With this we agree. Trial counsel had a duty to file a proper Motion for New Trial. His duty to represent the appellant was not complete until this was accomplished. Since appellant was deprived of this representation, we will consider all assignments of error which have been very ably briefed by the appointed appellant counsel.

The appellant is a twenty-six year old negro, who had dropped out of school after the eighth grade, and who had no previous record of arrest or conviction.

At about 8:00 A.M. on August 4, 1965, the appellant went to the home of one Paul Stubblefield, a Constable for a Justice of the Peace. Appellant testified, "I gave myself up to Paul Stubblefield."

Constable Stubblefield in turn took the appellant to the home of Gary Police Officer Clinton Savage. At this time the appellant told Stubblefield and Savage that he had been in East Chicago the night before, and that he had seen a man get shot; that when he heard the shots he ran from the scene and in so doing lost his hat. Appellant said he

felt that he had better contact authorities as they would be looking for him. Officer Savage advised the defendant at that time that in his experience the East Chicago police would be looking for the appellant as a material witness in the case, and that they should go to the Gary Police Station and contact the East Chicago Police Department. This they did.

The Appellant was then asked if he had his own transportation to go to the East Chicago Police Station. When he advised that he did not, arrangements were made for East Chicago Police Officers to come to Gary and transport the appellant to East Chicago.

At approximately 11:00 A.M. the appellant arrived at the East Chicago Police Station where he was questioned by East Chicago Police Officers Ford and Jackson. Prior to asking the appellant any questions these officers advised him that he was a suspect, and that he had a right to have an attorney, to remain silent, to make a phone call, and that any statement that he might make might be used against him in court. After being so advised, the appellant told the Police Officers that he just wanted to get it off his chest and conscience. At that time he informed the Police Officers that the gun used in the shooting belonged to a friend of his and was in Gary. The Officers took him to Gary where the gun was recovered.

Upon returning to East Chicago the first of two written statements was made by the appellant. This was done at about 3:00 P.M. In this statement the appellant admitted having shot the decedent, but claimed that it was a matter of self-defense. The appellant himself testified that he was interrogated at intervals between 10:00 A.M. and 7:30 P.M.

At 7:30 P.M., again being fully advised of his rights to counsel and rights to remain silent, the appellant made a second statement.

The second statement was taken according to Officer Jackson when the appellant had a Bible in his hand and when

he told the officers that somebody was healing him. He insisted on making a statement.

The admission into evidence of these two statements is now claimed by appellant to be reversible error.

The appellant's testimony of what happened in regard to the actions of the police officers in advising him of his rights and their use of mental coercion is contradictory to the testimony of the police officers. When the evidence in the record is in conflict as to whether the confessions or statements were voluntarily given, the Supreme Court will not disturb the trial court's ruling based on the conflicting evidence. *Matthews v. State* (1959), 239 Ind. 252, 156 N. E. 2d 387.

We will review the admissibility of a confession on appeal for the purpose of deciding as a question of law whether there is substantive evidence in support of the required material facts essential to a conviction. *Johnson v. State* (1968), 250 Ind. 283, 14 Ind. Dec. 39, 235 N. E. 2d 688.

The standards applied to confessions on admissibility are the same as in federal cases. They must be "free and voluntary" as was stated in *Malloy v. Hogan* (1964), 378 U. S. 1, 7, 12 L. Ed. 2d 653, 84 S. Ct. 1489:

> ". . . the admissibility of a confession in a state criminal prosecution is tested by the same standard applied in federal prosecutions since 1897, when, in *Bram v. United States,* 168 U.S. 532, 18 S. Ct. 183, 42 L. Ed. 568, the Court held that '[i]n criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment to the constitution of the United States commanding that no person "shall be compelled in any criminal case to be a witness against himself."' Id., 168 U.S. at 542, 18 S. Ct. at 187. Under this test, the constitutional inquiry is not whether the conduct of state officers in obtaining the confession was shocking, but whether the confession was 'free and voluntary;

that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises however slight, nor by the exertion of any improper influence. . . .' " (Citing cases).

In *Blackburn v. Alabama* (1960), 361 U. S. 199, 4 L. Ed. 2d 242, 80 S. Ct. 274, the Supreme Court stated that the inquiry determining the admissibility of confessions ■ must be based upon the totality of the circumstances and the facts involved.

In *Fikes v. Alabama* (1957), 352 U. S. 191, 197, 1 L. Ed. 2d 246, 77 S. Ct. 281, Chief Justice Warren in discussing the totality of the circumstances states:

"In *Stein*, the Court said: 'The limits in any case depend upon a weighing of the circumstances of pressure against the power of resistance of the person confessing. What would be overpowering to the weak of will or mind might be utterly ineffective against an experienced criminal.' "

In a concurring opinion Justice Frankfurter states:

"For myself, I cannot see the difference, with respect to the 'voluntariness' of a confession, between the subversion of freedom of the will through physical punishment and the sapping of the will appropriately to be inferred from the circumstances of this case—detention of the accused virtually incommunicado for a long period; failure to arraign him in that period; horse-shedding of the accused at the intermittent pleasure of the police until confession was forthcoming. *No single one of these circumstances alone would in my opinion justify a reversal.* I cannot escape the conclusion, however, that in combination they bring the result below the Plimsoll line of 'due process.' " (Emphasis ours).

The appellant asserts that he had no criminal record and had never been arrested, therefore he lacked experience in criminal matters. While lack of criminal experience ■ is a factor, it is not complete in itself. The real question is whether, considering all factors, was he in possession of information at the time to render his confession

knowingly and voluntarily. *Miranda v. Arizona* (1966), 384 U. S. 436, 469, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

Appellant claims that at the time of the second confession he was laboring under a mental weakness as shown by the testimony of one of the officers that while holding a Bible appellant stated somebody was healing him and he must make the statement. The fact he was holding a Bible and was convinced in his own mind that he was being healed does not show a mental weakness. Instead it seems to substantiate the appellant's own statements of religious belief in that after the shooting, he went straight home and read his Bible.

Wigmore makes the following observation on this subject:

". . . It is obvious that, in their ordinary aspect, the influence of religious considerations makes entirely for truth in a confession, and not against it." 3 Wigmore on Evidence, third ed. § 840, p. 279.

Wigmore then quotes from Joy on Confessions as follows:

" 'It seems difficult to imagine that a man under spiritual convictions and the influence of religious impressions would therefore confess himself guilty of a crime of which he was *not* guilty; or that a man under a strong sense of his spiritual relations with God could hope to please God by a falsehood; that a "confidence created" between him and his pastor, or the "being thrown off his guard" by this confidence, should induce him, not to confess (that it might naturally do if he were guilty), but induce him to confess falsely. Such spiritual convictions, or spiritual exhortations, seem from the nature of religion, the most likely of all motives to produce truth. They are therefore of a class entirely different from those that exclude confessions. A confession is excluded because the motive which induces it is calculated to produce untruth, because it is likely to lead to falsehood. If temporal hopes exist, they may lead to falsehood. Spiritual hopes can lead to nothing but truth.' "

We therefore hold that it was within the province of the jury to believe that the religious convictions of the appellant tended to establish the truth of his confession, rather than to weaken it.

The appellant also contends that the confessions were illegally obtained because his original arrest was without warrant, and he was not arraigned before either of the confessions. In support of this proposition he cites *Suter v. State* (1949), 227 Ind. 648, 88 N. E. 2d 386, in which the Supreme Court of Indiana reversed a conviction on the basis of an illegal confession in which it was held, *inter alia,* that a peace officer making an arrest without warrant on probable cause could not legally hold the arrested person for a longer period than was reasonably necessary under the circumstances to obtain a proper warrant. In the case at bar the appellant surrendered himself to the police officers, arriving at the East Chicago Police Station at approximately 11:00 A.M. He first claimed he had merely witnessed the shooting in question. By 3:00 P.M. he had signed a written statement that he had shot the decedent in self-defense. After intermittent questioning, by 7:30 P.M. he had made his final confession. This was not a case of police officers making an investigation terminating in the arrest of the appellant without a warrant as was in the *Suter* case. The facts in this case placed the officers in a position of talking to the appellant at his request and only during this conversation were the facts developed which ultimately led to appellant's arrest. Officers could hardly be required to obtain a warrant in such a case prior to questioning the appellant, and certainly they could not be expected to take him before a magistrate for arraignment before learning the facts of the case from the appellant. To so hold would place police officers in an impossible position when a person presents himself at a police station to discuss his participation in a crime.

The appellant also relies upon *Watts v. State of Indiana* (1948), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801, for the proposition that the interrogation of the prisoner and the obtaining of a confession prior to presenting the prisoner for arraignment constitutes duress and, therefore, renders the confession illegal. The factual situation in the *Watts* case was far different than that of the case at bar. In the *Watts* case the defendant was held incommunicado for some six days during which time he was deprived of regular food and regular sleep. He was subjected to long periods of interrogation by officers working in shifts. All of this, after his initial arrest, had been accomplished after police investigation leading to his involuntary apprehension. We see no parallel whatever to the facts in the *Watts* case and the case at bar. While it is true that this Court has previously held in the *Suter* case that illegal detention can be of such a nature as to constitute duress in the obtaining of a confession from the defendant, this rule is not to be confused with appellant's contention here that the mere failure to arraign the defendant immediately upon his apprehension automatically invalidates any confession he might make during such period of detention. With regard to this specific question the Supreme Court of the United States has stated that the mere fact a confession was made while the defendant is in custody prior to arraignment does not render it invalid. The facts must show a causal connection between the failure of immediate arraignment and the obtaining of the confession. *U. S. v. Mitchell* (1944), 322 U. S. 65, 88 L. Ed. 1140, 64 S. Ct. 896.

Appellant also claims error in that the Trial Court did not read the confessions to the jury in their entirety and cites as authority *Micks v. State* (1967), 249 Ind. 278, 11 Ind. Dec. 344, 230 N. E. 2d 298. We do not see a parallel between the *Micks* case and the case at bar. In *Micks* the Supreme Court reversed for the reason that the lower court had commented to the jury concerning

the exhibit and had placed his own interpretation thereon. There is no such claim in the case at bar. In addition, in the case at bar following the reading by the Court of at least a portion of the confession to the jury, the confessions were passed to the jury for their examination. This being the case, we must presume that each of the jurors having been given the opportunity of examination did, in fact, see the confessions in their entirety. We, therefore, see no merit to this allegation of error.

The appellant also claims reversible error in the manner in which the Trial Court commented during the course of the examination of witnesses during the trial. We have carefully examined the record containing the remarks of the judge and find that the objections were made during the cross-examination of state's witness Harold Ford. The attorney for appellant posed questions to the witness to test his recollection concerning appellant's educational background at the time of the taking of the confession. After several questions concerning this matter the following question was asked:

"Q.   Do you have a fairly clear recollection of that fact?

"*BY THE COURT:*

"Q.   How long ago was this?

"*The Witness:*

"A.   A year ago.

"*BY THE COURT:*

This is a year ago, in the month of August, 1965.

"*By Mr. Work:*

If it pleases the Court, everything he's testified here today happened a year ago! I think that defendant has the right to cross examine this man; he's testified from the same capacity concerning details, as to only what he wants to remember, and there are things he does not remember.

*"BY THE COURT:*

You said that, Mr. Work.

*"By Mr. Work:*

I want the Jury to disregard that, he remembers only what he wants to remember.

*"BY THE COURT:*

The Jury will believe or disbelieve any comments.

*"By Mr. Work:*

May I have a recess so I could approach the Bench, please?

*"BY THE COURT:*

You can approach the Bench without a recess.

*"By Mr. Work:*

Your Honor, Counsel for the Defendant objects to the Court's commenting upon the weight and credibility of the evidence sought to be enlisted by the Defendant on cross examination of Officer Ford. The Counsel for the Defense strongly urges the Court that the Court's comments are material statements to the Jury, to disregard comments on cross examination, of Defense's Counsel.

"BY THE COURT:

Objection overruled! You may continue."

We see no unfair comment by the Court in the above language. In every trial the Court has a duty to keep questioning within reasonable bounds and to avoid undue belaboring of witnesses concerning their answers to questions. We feel the Court summed up the situation by his statement above quoted, "The Jury will believe or disbelieve any comments." We see no attempt on the part of the Court to invade this province of the jury. We feel the Court was within the doctrines recognized by this Court in *Dombkowski v. State* (1967), 249 Ind. 32, 11 Ind. Dec. 628, 230 N. E. 2d 602.

The appellant also claims error in that the Trial Court proceeded on the presumption that the confessions would be considered prima facie admissible in evidence unless ■ the contrary was established by the appellant. Counsel for the appellant prior to trial had filed a motion to suppress and reject the confessions. There was no attempt by Trial Counsel to proceed otherwise. The Court permitted defense counsel to present evidence out of the presence of the jury on his motion, which he did without objection to the preceeding. Following the presentation of appellant's evidence as to the voluntary nature of the confessions the prosecuting attorney called state's witnesses to testify as to the facts surrounding the taking of the confession. It is true that this Court has previously stated that a confession when offered into evidence against an accused is prima facie admissible. *Anderson v. State* (1933), 205 Ind. 607, 186 N. E. 316.

In commenting upon this rule Wigmore has stated:

"(4) A few jurisdictions regard the confession as 'prima facie' *admissible,* and require the defendant to show that the alleged improper inducement existed. This is the practical and natural rule; for if there is any reason to object to the confession, no one can know it better than the defendant.—Of course, he should be admitted to testify to this question of fact preliminary to the Court's ruling, without waiving his privilege."

Wigmore on Evidence, third ed., § 860 (4), p. 344. However, to the extent that prior statements by this Court might be interpreted to mean that the accused must actually ■ assume a burden of proof, we feel compelled to qualify those statements. It has long been the fundamental law in Indiana that the burden of proof in a trial never shifts to a defendant. The state must establish beyond reasonable doubt all necessary elements of the crime. *Whitaker v. State* (1960), 240 Ind. 676, 168 N. E. 212. This requires that the state establish to the satisfaction of the Court

that the confession is in truth and in fact a confession, that is that it was rendered freely and voluntarily, before the same may be submitted to a jury. Of course, this is accomplished if the signed confession is presented and no objection is made by the defendant to its admission into evidence. However, when the objection is made, as in this case, it would be error for the trial Judge to permit the same to be read to the jury without affirmative proof from the state that it had been rendered voluntarily. An examination of the record in the case at bar discloses such proof was presented. The facts surrounding the taking of the statements as previously set out in this opinion are established from testimony of the state's witnesses before the Judge and out of the presence of the jury prior to the admission of the confessions in evidence. We, therefore, hold that the procedure followed by the Trial Court was in keeping with the requirements of due process as required by the Constitution of Indiana and Constitution of the United States.

Because of the severity of this case and because of the nature of the questions raised by the appellant in his brief, we have carefully examined not only the controlling cases in Indiana but also the recent cases decided by the Supreme Court of the United States, including *Escobedo v. Ill.* (1964), 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, in an effort to determine whether or not the police authorities and the Trial Court afforded every constitutional protection outlined in these recent decisions. From the record in this case we hold that the appellant received full protection of his constitutional rights as guaranteed by both the Constitution of Indiana and the Constitution of the United States. It is noted that the trial in this case was held on May 23, 24 and 25 of 1966. The Supreme Court of the United States held in *Johnson v. New Jersey* (1966), 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772, that the principles of law set forth in *Miranda v. Arizona, supra,* are available only to persons whose trials had not begun as of

June 13, 1966. However, we note that the Supreme Court of the United States in its opinion in *Miranda*, beginning at page 477, made the following statement recognizing proper police functions:

> "Our decision is not intended to hamper the traditional function of police officers in investigating crime. see *Escobedo v. Illinois*, 378 U.S. 478, 492, 12 L. Ed. 2d 977, 986, 84 S. Ct. 1758. When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.
>
> "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

From the above language it is clear that the Supreme Court of the United States in rendering its recent decisions has not intended to interfere with proper police questioning of a person who has voluntarily entered the police station and who has, as in the case at bar, been fully advised of his constitutional rights by the officers present, even before he is questioned concerning his voluntary

statements. Police work in this case was not only proper but exemplary of the standards set out in the *Miranda* and other related decisions.

The judgment of the trial court is, therefore, affirmed.

DeBruler, C. J., and Arterburn and Hunter, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 249 N. E. 2d 493.