WILLIAM FREDERICK SANDERS *v.* STATE OF INDIANA.

[No. 870S193. Filed July 14, 1972. Rehearing denied October 11, 1972.]

44

*Joseph A. Williams,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Frank Hanley,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by William Frederick Sanders from a judgment in the Allen Circuit Court convicting him of First Degree Murder. Trial was to a jury, and upon conviction appellant was sentenced to life imprisonment in the Indiana State Prison.

The issues presented for review on appeal may be grouped as follows:

1. The verdict is not sustained by sufficient evidence in that the State allegedly failed to prove premeditated malice.

2. The court erred in admitting into evidence certain written and oral statements made by appellant which were allegedly obtained in violation of his constitutional rights.

3. The court erred in overruling appellant's Motion to Strike the Jury Panel wherein it was alleged that Negro citizens were systematically excluded from jury service thus denying appellant his right to a trial by a jury of his peers.

The evidence most favorable to the State, as revealed by the record, is as follows: At approximately ten o'clock on the morning of November 11, 1968, appellant went to the apartment of Miss Barbara Wright in Fort Wayne, Indiana, for the purpose of paying her support money. An argument resulted when Miss Wright informed appellant of her intentions to marry another person. While appellant's back was turned, Miss Wright apparently secured a heavy stick or club and advanced toward him as if to strike him. Appellant turned before the blow was struck, and he succeeded in wresting the club away from her. Appellant then proceeded to strike Miss Wright with the club, and after the second blow she fell to the

floor. The appellant next struck Miss Wright's two children, Michelle, age eighteen months, and Yolanda, age seven months, as they went to their mother's side. Appellant immediately left the apartment, but he returned a short time later. Using a jar of gasoline which was stored in a closet, he doused the bodies of the three victims and set the apartment on fire. Appellant then fled the apartment and did not return. The bodies of the victims were discovered by firemen who were called to the scene to extinguish the fire.

Appellant was charged only with the murder of the eighteen month old child, Michelle. An autopsy revealed that the cause of her death was due to a blow on the head with a blunt instrument which caused extensive hemorrhaging into the brain.

The above facts relating to the commission of the crime were gained solely from the appellant's confession. Counsel for appellant places great weight on the fact that Miss Wright appears to have initiated or provoked the attack. Counsel also insists that the jury must accept appellant's entire version of the incident since it is uncontradicted by any other evidence. Appellant contends that after striking Miss Wright he "panicked" and proceeded to strike the two children. From this evidence, it is argued, a jury could not find premeditated malice and a conviction of First Degree Murder should not be sustained. We do not agree.

It is well established law that the jury may accept or reject all or any part of a defendant's confession or admission. See,
Corbin v. State (1968), 250 Ind. 147, 234 N. E. 2d 261;
Swift v. State (1961), 242 Ind. 87, 176 N. E. 2d 117;
Jackson, etc. v. State (1958), 238 Ind. 365, 151 N. E. 2d 141. Therefore, the jury was certainly not bound to accept the appellant's entire explanation of the incident.

In regard to the argument that premediated malice was not sufficiently established, this Court recognized in May v.

*State* (1953), 232 Ind. 523, 112 N. E. 2d 439, that malice may be inferred from the intentional use of a deadly weapon. Premeditation may be proved by both direct and circumstantial evidence. *Wahl* v. *State* (1951), 229 Ind. 521, 98 N. E. 2d 671; *May* v. *State, supra.* It is not necessary that an appreciable length of time expire before the premeditated intent to kill is formed. *Pierce* v. *State* (1970), 253 Ind. 650, 256 N. E. 2d 557. In the instant case, the evidence discloses that appellant intentionally and deliberately struck Michelle Wright, an eighteen month old infant, with a club with sufficient force to fatally injure her. Appellant's contention that he was so upset and excited that he was incapable of acting with premeditated malice is a claim which the jury could properly believe or disbelieve. Apparently the jury chose to disbelieve this part of the confession, and in view of all of the facts and circumstances surrounding this event, we are of the opinion that the jury's decision was proper. This Court will neither weigh the evidence nor determine the credibility of witnesses. Where, as here, there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the jury's verdict will not be disturbed on appeal. *Valentine* v. *State* (1971), 257 Ind. 197, 273 N. E. 2d 543.

In regard to appellant's contention that his confession should not have been admitted into evidence, we must first examine the events leading up to his arrest and subsequent confession. On the afternoon of November 11, 1968, the date of the killing, two Fort Wayne Police Officers drove to the home of Barbara Wright's stepmother where they found the appellant. One officer went to the house and asked the appellant if he would come outside to the police car and speak with him. The appellant agreed, and upon arriving at the car, he was orally informed of his constitutional rights. Appellant was then asked if he would be willing to accompany the officers to the police station and submit to questioning. Appellant agreed to

the request, and, while enroute to the station, he was again orally advised of his constitutional rights. Soon after his arrival at the station, appellant was taken to one of the interrogation rooms. At that time his constitutional rights were read to him from a "rights and waiver" form. He was asked if he understood everything that had been explained to him, including the waiver. The appellant indicated that he understood, and he agreed to sign a waiver of his constitutional rights. The signed waiver was introduced at trial. Before the interrogation was commenced, appellant was again asked if he wanted an attorney present, and he replied that he did not. Appellant was interrogated three times that evening, the last session concluding at 12:50 A.M. on November 12. At that time he was placed under arrest on a preliminary charge of aggravated assault and battery.

On the morning of Novembr 12, appellant appeared in City Court where he was informed by the court of the nature of the preliminary charge against him. He was further advised that the charge was merely a holding charge, and that sometime within the next seven days the State would either dismiss the charge or file formal charges in the Allen Circuit Court. The appellant was also fully apprised of his constitutional rights by the judge.

After the court hearing, appellant was interrogated for a period of two hours. He continued to deny that he had anything to do with the killings. However, during the afternoon, of November 12, he admitted that he had argued with Barbara Wright at her apartment on the morning of November 11, and that she had attempted to strike him with a club. He claimed that he couldn't remember any of the other details except that a fire had started. Before this oral statement was reduced to writing, appellant was again advised of his right to remain silent, that anything he said would be used against him in court, and that he had a right to have an attorney present. He was then asked whether he wanted

an attorney present, and he replied that he did not. He was not advised that the court would appoint an attorney for him if he could not afford one. Appellant signed the written statement, the contents of which reflected his earlier oral statement. Later that same afternoon, appellant signed another written statement which contained essentially the same explanation of the incident as did his earlier statement. Before this statement was taken, he was again advised of his rights except for his right to court-appointed counsel if he could not afford to retain an attorney.

It was not until November 13, that the appellant made a full confession of his guilt, filling in the details which he had omitted on the previous day. Before this statement was reduced to writing, he was again informed of his constitutional rights except for his right to court-appointed counsel. It should be observed that the rights which were given to him prior to taking all of these written statements were printed at the top of the forms used by the Fort Wayne Police Department for taking such statements. Although any reference to his right to court-appointed counsel was omitted from these forms, they did contain the question, "Do you want an attorney present?" Each time the appellant gave a negative answer to this question.

It should further be noted that appellant was subjected to approximately thirteen hours of interrogation during his first forty-six hours in custody. At no time did appellant express a desire not to continue to answer questions. Nor does it appear that appellant was threatened or coerced in any manner. He was fed regularly, permitted to use the telephone, and was allowed to visit with his parents. The record is absolutely void of any evidence which tends to indicate that appellant was mistreated in any way.

Appellant's first objection to the admissibility of the confession is that he was not informed of his constitutional rights

as required by *Miranda* v. *Arizona* (1966), 384 U. S. 436. However, the evidence discloses that he was given his *Miranda* warnings three times on November 11, 1968, and once on November 12, 1968, in the City Court. To be sure, the warnings given to him prior to taking the three written statements did not satisfy the *Miranda* decision due to the omission of the fact that he was entitled to court-appointed counsel. However, it cannot be seriously contended that these latter warnings were erroneous or misleading so as to confuse the appellant. The *Miranda* warnings are required in order to assure that an individual who is suspected of criminal activity has been made fully aware of certain of his constitutional rights *prior* to being subjected to custodial interrogation. As stated beforehand, appellant was apprised of his constitutional rights three times prior to *any* interrogation. Three times he knowingly and intelligently chose to waive these rights, and this is sufficient to satisfy the *Miranda* requirements. It may well be that appellant's conviction resulted solely from his failure to exercise his constitutional rights, but this fact should in no way raise a conclusive presumption of a constitutional violation. This Court being satisfied that the police did nothing, intentionally or unintentionally, to confuse or coerce the appellant in order to obtain his confession, we therefore conclude that the confession was valid.

Counsel for appellant next objects to the language contained in the printed rights form used by the Fort Wayne Police Department. However, this language was expressly approved by this Court in *Dickerson* v. *State* (1972), 257 Ind. 562, 276 N. E. 2d 845, and *Jones* v. *State* (1969), 253 Ind. 235, 252 N. E. 2d 572. Therefore, there is no merit to this contention.

It is also argued that appellant's confession was obtained prior to informing him of the nature of the charge against him. We do not agree. It cannot be denied that appellant was aware that the investgation related to his suspected participation in the wrongful killing of three persons. Appellant was

also advised in City Court of the nature of the preliminary charge of aggravated assault and battery.

The final contention concerning the admissibility of the confession is that there was no showing of probable cause for appellant's arrest on the charge of aggravated assault and battery, and that the confession obtained during this period of alleged unlawful detention was therefore inadmissible. The record before us does not reveal whether probable cause for appellant's arrest did or did not exist. The record does indicate that appellant was brought before the judge in City Court and preliminarily charged pursuant to IC 1971, 35-4-1-1, (Ind. Ann. Stat. § 9-704(a) [1956 Repl.]). Implicit in the language of that statute is that probable cause for the arrest and the preliminary charge must exist. After hearing the nature of the charge and the facts surrounding it, including the defendant's explanation of the incident, the judge is required to rule as to whether the defendant should be discharged or committed to confinement for a period not exceeding seven days. In the present case, the judge apparently determined that commitment was justified. Counsel for appellant's argument that probable cause did not exist is based solely upon the fact that appellant had not yet confessed to any wrongdoing. That fact alone, of course, is in no way determinative of the issue of probable cause. Furthermore, assuming, *arguendo,* that probable cause for appellant's arrest was lacking, it does not necessarily follow that the confession is inadmissible *per se.* The test governing the admissibility of a confession is whether it was freely and voluntarily given. See, *Smith* v. *State* (1969), 252 Ind. 425, 249 N. E. 2d 493; *Malloy* v. *Hogan* (1964), 378 U. S. 1. To be sure, the circumstances surrounding an unlawful detention are factors which may be considered in determining whether the confession was voluntarily and freely made. However, this is true even when the detention is lawful. In the recent case of *Zupp* v. *State* (1972), 258 Ind. 625, 283 N. E. 2d 540, a very similar question was presented. In *Zupp,* the defendant was arrested

pursuant to a warrant which was issued without a showing of probable cause. After his arrest, the defendant consented in writing to a search of his automobile and his living quarters. The written waiver recited that the defendant had been informed of his Fourth Amendment rights to refuse a search and of his right to have no search conducted without a warrant. In response to the argument that the evidence seized during the search was inadmissible due to the unlawful arrest, Justice Prentice, speaking for the majority, stated:

"Conceding the invalidity of the arrest warrant, the evidence referred to was obtained in the searches made under the aforesaid waiver and consent; and we find no merit to the defendant's claim that such consent was coerced. *The illegality of the arrest, therefore, does not bear upon the admissibility of the evidence.*" 258 Ind. 625, 283 N. E. 2d at 541-542. (our emphasis)

We are of the opinion that the holding in *Zupp* is equally applicable to the facts in the case at bar. This Court having earlier determined that the confession was voluntarily and freely made and that the procedure followed by the Fort Wayne Police Department fully complied with *Miranda* v. *Arizona, supra,* we conclude that no error was committed in regard to this matter.

Lastly, it is argued that Negro citizens were systematically excluded from the jury. In his attempt to prove this allegation, counsel for appellant established that the 1960 census for Allen County revealed that Negro citizens comprised 5.2% of the population. He also introduced witnesses who testified that during the previous year the highest number of Negro citizens who *appeared* for jury duty was two, with the exception of one time, when it was thought that three *may* have appeared. The basic jury panels were composed of seventy-five people. In the trial of the present case, a panel of one hundred seventy-five persons was selected. Of these, only one hundred eighteen persons actually *appeared,* two of whom were Negro citizens. Counsel conceded that he was not alleg-

ing that the selection system was administered with a lack of good faith; rather he insisted that the system used resulted in unconstitutional discrimination against members of the Negro race. All of this evidence was essentially uncontradicted, and at the close of appellant's case, the State produced absolutely no evidence to rebut it.

It is well established that jury selection systems must draw their jurors from a fair cross section of the community. *Smith* v. *Texas* (1940), 311 U.S. 128. Equally clear, is that the defendant has the initial burden of demonstrating that purposeful discrimination exists. See, *Whitus* v. *Georgia* (1967), 385 U.S. 545; *Hernandez* v. *Texas* (1954), 347 U.S. 475. This matter was discussed in *United States* v. *Butera* (1st Cir. 1970), 420 F. 2d 564, 569, where the court stated:

> "[W]hile 'purposeful discrimination' may connote an element of bad faith in ordinary usage, the term has not been so limited by the Supreme Court; rather, the breadth with which the term has been used by the Court indicates that *purposeful discrimination exists whenever significant unexplained disparities exist.* In other words, it is not the significant disparities themselves which are unconstitutional, Akins v. Texas, 325 U. S. at 403-404, 65 S. Ct. 1276; Hoyt v. Florida, 368 U.S. at 69, 82 S. Ct. 159; they only raise the inference of discrimination. E.g., Billingsley v. Clayton, 359 F. 2d 13, 17 (5th Cir. 1966), (en banc), cert. denied, 385 U.S. 841, 87 S. Ct. 92, 17 L. Ed. 2d 74 (1966); Witcher v. Peyton, 382 F. 2d 707, 709-710 (4th Cir. 1968); Salary v. Wilson, 415 F. 2d 467, 470-471 (5th Cir. 1969). *Once that inference has been raised, it is the government's failure or inability to demonstrate that the disparities are not the product of discrimination which confirms the inference and invalidates the jury pool.*" (our emphasis)

Thus, the issue before this Court is whether or not counsel for appellant established a "significant disparity" between the percentage of Negro citizens selected for jury duty and the percentage of Negro citizens in the community. If he has done so, his Motion to Strike the Jury Panel should have been

sustained because the State failed to introduce any evidence to overcome the inference of discrimination.

It should first be observed that appellant's Motion to Strike challenges the validity of the jury *selection* process. Turning to the evidence introduced at the hearing, it becomes readily apparent that absolutely no evidence was introduced which would establish the number of Negro citizens *selected* for the jury panels. For example, it was established that fifty-seven of the one hundred seventy-five persons selected on the jury panel in the present case failed to appear for duty. Appellant introduced no evidence which would indicate how many of the absentees were Negroes. It would be an absurd exercise in speculation for this Court to invalidate a jury *selection* process when the only evidence on the subject relates solely to the persons *appearing* for duty rather than to the persons selected on the original panel. Therefore, we need not decide what constitutes a "significant disparity" since the appellant failed to introduce reliable data upon which to base a finding. We conclude that appellant's Motion to Strike was properly overruled by the trial court.

For all of the foregoing reasons, the judgment of the trial court must be affirmed.

Judgment affirmed.

Arterburn, C.J., Givan and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—I continue in my belief that the warnings given to the appellant when he was first arrested were inadequate and it is undisputed that none of the subsequent warnings were sufficient. *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. The warnings indicated that the accused had a right to have a lawyer present during questioning but stated that "we have no way of giving you a lawyer but one will be appointed for you *if and when* you go

to court and the court finds you a pauper." (Emphasis added.) I continue in my belief that our Constitutions, both State and Federal, guarantee equal treatment to all individuals and classes in our society, both rich and poor, educated and uneducated. The warning does not grant that equal treatment. See my dissents in *Dickerson* v. *State* (1971), 257 Ind. 562, 276 N. E. 2d 845, and *Jones* v. *State* (1969), 253 Ind. 235, 252 N. E. 2d 572.

NOTE.—Reported in 284 N. E. 2d 751.