FLOYD TEWELL *v*. STATE OF INDIANA.

[No. 974S170. Filed January 19, 1976.]

*Jerry W. Newman,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Floyd Tewell, was convicted on February 21, 1974, for kidnapping and the commission of rape while armed with a deadly weapon. The Appellant had been indicted on both those counts by the Marion County Grand Jury on August 13, 1973. The Appellant was sentenced on March 12, 1974. Pursuant to statute, he was sentenced on Count I, kidnapping, to life imprisonment. Upon the recommendation of the jury, the Appellant was sentenced on Count II, commission of rape while armed with a deadly weapon, to a determinate sentence of twenty years. The sentences were to run consecutively, that of Count II following the expiration of the sentence under Count I.

Evidence at trial revealed that one Priscilla Kramer, a respiratory therapist at Indiana University Hospital in Indianapolis, was abducted and raped on the afternoon of May 16, 1973. She was entering the gate to a parking lot behind Riley Hospital when two men stepped out from behind her. They approached her and one man held a switch blade knife to her back. She was forced to go to her car and drive the two men to a deserted grass road near Waterway Boulevard at about 3:15 p.m. At a tree-surrounded area near this grass road the two men raped their captive at knifepoint. They then had her drive to the emergency room parking lot at General Hospital, the knife still held behind her. When the two men got out of the car, the victim drove off and returned to University Hospital. She reported the rape to her supervisor, who in turn notified the police. The victim identified the Appellant at trial as the man wielding the switchblade.

## I.

The Appellant's first allegation of error is that there is insufficient evidence to support the verdict of the jury. The basis for this contention is that the initial description by the victim of her knife-wielding attacker did not accurately describe the Appellant. In particular, the height of the attacker in the initial description was stated as five feet, one inch. Evidence showed that the Appellant was five feet, seven inches tall. (The Appellant contends in a separate contention of error that the victim's identification of the Appellant was irrational and unsupported by the evidence. This contention is resolved through our consideration of the Appellant's sufficiency argument and his separate argument that the identification was somehow tainted by a suggestive pre-trial lineup.)

In determining whether a verdict is supported by sufficient evidence, this court does not weigh evidence or consider the credibility of witnesses. We look to the evidence most favorable to the state and the reasonable inferences to be drawn therefrom. The conviction will be affirmed if, from that viewpoint, there is substantial evidence of probative value from which the trier of fact could infer that the Appellant was guilty beyond a reasonable doubt. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686, and cases cited therein.

It is true that the prosecutrix's initial description of her attacker gave his height as less than that of the Appellant. It is also true that she testified that she was a bad judge of heights. Moreover, she identified the Appellant, in open court, as one of her attackers. The defense had ample opportunity to explore any alleged discrepancies between the initial description and subsequent identifications during cross-examination. To suggest on appeal that the Appellant could not be the alleged assailant because of this discrepancy asks this court to weigh the evidence and judge the credibility of the witness. We can do neither.

## II.

Presented as the second contention is the issue of whether or not the Appellant could be charged with and convicted of the two separate crimes of kidnapping and rape. It is argued that the force and detention involved were but elements of the crime of rape while armed with a deadly weapon and do not constitute kidnapping. This court disposed of this issue in *Wilson* v. *State*, (1970) 253 Ind. 585 at 592, 255 N.E.2d 817 at 821-822:

> "Appellant suggests that this court adopt a principle whereby any restraint and transportation of the victim would be considered only as an integral part of the charge of rape and not as a separate charge of kidnapping. In other words, that because the rape in this case also included a kidnapping or transportation under restraint he should not be prosecuted separately for that crime. Carrying the argument further it seems the victim was not carried very far to constitute a real kidnapping and it was merely incidental to the rape. Of course, the argument fails because a transportation or kidnapping is not necessarily involved in a rape. It might likewise be urged in any crime of violence that the victim was touched only 'lightly' and only incidental to the main crime, and therefore should not be subject to a separate or included charge of assault and battery with intent. In such cases as this the attacker is guilty of a compound crime as happens in instances when a victim is also killed in the commission of another crime, or also kidnaps, while committing a robbery. We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees fit to compound or multiply them. Such a principle would encourage the compounding and visciousness of the criminal acts. * * *"

It is also argued that the sentence of life imprisonment for the crime of kidnapping is excessive. Whatever the merits of such an argument may be, we cannot intervene at this time. This sentence for kidnapping does not constitute cruel and unusual punishment. *Beard* v. *State*, (1975) 262 Ind. 643, 323 N.E.2d 216. "It may be that the penalty provided by the kidnapping statute is too great in view of the factual situation as herein delineated, and that the legislature should give some thought to an

amendment of that statute, but that is a function of the legislature, not of this court." *White* v. *State*, (1963) 244 Ind. 199 at 204, 191 N.E.2d 486 at 488. While the judicial article of our Constitution was amended in 1970 to provide for an express power to review and revise a sentence imposed, we have to date refrained from exercising this authority. Policies and programs not yet established are required before this power can be properly exercised. *Delph* v. *State*, (1975) 263 Ind. 385, 332 N.E.2d 783; *Beard* v. *State*, *supra*.

## III.

It is contended that the trial court erred in failing to permit the Appellant's trial counsel to orally voir dire prospective jurors. The trial court conducted the voir dire and permitted trial counsel to submit written questions to supplement those of the Court. As pointed out in *White* v. *State*, (1975) 263 Ind. 302, 330 N.E.2d 84, a trial judge has wide discretion in conducting voir dire.

Ind. R. Tr. P. 47(A) provides that attorneys shall be permitted to supplement the examination of prospective jurors by the trial court; it does not require that this be done in any particular way. Counsel does not suggest or point out any specific injury or harm resulting from the voir dire examination of the jury in this case, nor does he indicate which written questions were not sufficient for such examination. *White* v. *State*, *supra*, was an appeal by the Appellant's co-defendant in this case. The identical question arose there as here. This court held:

"Appellant claims that he was prejudiced because the trial court refused to allow defense counsel to *verbally* supplement the court's voir dire. Counsel does not suggest what his verbal supplement could have produced that could not have been achieved through the written questions which the trial judge permitted both sides to submit as a supplemental to the court's conduct of the voir dire. Rule T.R. 47(A) provides simply that in the event the court conducts the voir dire 'the court shall permit the parties or their attorneys to supplement the examination by further inquiry.' This passage cannot be read to require a particular

form; such as, verbal questioning. A trial judge has wide discretion in arranging and conducting a proper voir dire. Robinson v. State, (1973) [260] Ind. [517], 297 N.E.2d 409. Rather than abusing that discretion, the trial judge in this case was seeking to avoid the practice, condemned by this court in *Robinson, supra,* of lawyers trying their cases on voir dire. The trial judge properly assumed an active role in the voir dire proceedings and exercised this broad discretionary power to restrict interrogation to proper matters by regulating the form as well as the substance of the interrogation." *White* v. *State, supra,* at 86-87.

Appellant's contention has previously been determined by this court to be without merit.

If a trial judge places prejudicial emphasis on words, improperly phrases questions, or prejudicially inflects his voice, objection can be made and error alleged on appeal based upon such conduct. This was not done here. The Appellant's conclusions regarding jury response to a judge and resulting pro-prosecution responses are speculation which cannot sustain the burden placed upon him to show an abuse of trial court discretion.

The Appellant also contends that the trial court erred in denying the Appellant's motion for additional peremptory challenges. Under Ind. Code § 35-1-30-2 (Burns 1975), co-defendants must join in their challenges and together are allotted the statutory number of challenges given a single defendant. This statute has been upheld against constitutional challenge. *Martin* v. *State,* (1974) 262 Ind. 232, 317 N.E.2d 430, *cert. denied* (1975) 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841. Accordingly, the trial court did not err in denying the Appellant's motion for additional peremptory challenges.

As the *Martin* decision points out, actual prejudice caused a defendant by trial with a co-defendant is corrected through a severance of trials. The Appellants motion for separate trials, the denial of which he contends was also reversible error, thus was a proper recourse. The record, however, does not support the contention that the

denial of the motion was erroneous. The granting of a motion for separate trials rests within the discretion of the trial court and reversible error results only when this discretion is abused. *Frith* v. *State*, (1975) 263 Ind. 100, 325 N.E.2d 186. The Appellant asserts that he "demonstrated that he was prejudiced by having jurors which he preferred on the jury challenged by the co-defendant." While the Appellant asserted such prejudice, no demonstration of actual prejudice was made. Due process does not require a preferred jury—it requires a fair and impartial one. The Appellant has not shown that this was not accomplished and thus fails to show that the trial court abused its discretion.

The selection of the jury in this case is also challenged on the ground that the trial court, on its own motion, dismissed a prospective juror when she indicated that she "had some grave reservations about possibly being responsible for the imposition of punishment which was as severe as the penalty carried by a charge and conviction for the crime of kidnapping." This is a distortion of the record.

The record reveals that the trial court dismissed the prospective juror for a "composite number of reasons." Excluding "inaudible" responses, the following reasons are apparent on the face of the record: a statement that she did not think she could understand the situation; an apparent statement that even if she knew the defendants should be punished, she would not like to be responsible for it; eyesight requiring glasses that were then broken; and an inability to comment on whether or not she could apply the standard of beyond a reasonable doubt. "The excusing of a juror on the court's motion rests in its sound discretion, and no error is committed where no injury results from the court's action." *Glenn* v. *State*, (1972) 154 Ind. App. 474, 290 N.E.2d 103 at 107. The Appellant has presented no injury from which it can be concluded that the trial court abused its discretion in dismissing the prospective juror.

The Appellant's final challenge to the selection of his jury is based upon its racial composition. Only one prospective juror called before trial here was black. (She was challenged by the Appellant because her brother-in-law was employed by the Department of Corrections.). From this the Appellant concludes that blacks were systematically and intentionally excluded from jury service. We do not accept this reasoning.

The right to an impartial jury precludes systematic and intentional exclusion of any particular class of persons, but it does not require that any particular class be represented. *Owens v. State*, (1975) 263 Ind. 487, 333 N.E.2d 745; *Shuemak v. State*, (1970) 254 Ind. 117, 258 N.E.2d 158. A defendant carries the initial burden of demonstrating that purposeful discrimination exists. *Owens v. State, supra, Sanders v. State*, (1972) 259 Ind. 43, 284 N.E.2d 751. The Appellant has asserted that only one black was called to serve as a juror and that trial counsel for the Appellant stated in his pre-trial motion to suppress the jury that his observation of the prospective jurors of another trial revealed that there only two jurors out of fifty were black. This simply does not sustain the burden placed on the Appellant to show purposeful discrimination.

## IV.

The Appellant next raises three alleged errors arising at trial. The first alleged error concerns the trial court's Preliminary Instruction No. 2. That instruction reads as follows:

"In this criminal trial you are the judges of both the law and the facts.

"This means that you are the exclusive and sole judges of what facts have been proved or not proved, and that you may determine what the law is as it relates to the case before you. This does not mean that you have to disregard or change either the law or the facts.

"You should determine the facts only from the evidence that is presented in court, and you may consider all the reasonable inferences which may be drawn therefrom.

"You should determine the law as it has been enacted

by the legislature of this state and interpreted by higher courts of record of Indiana and the United States.

"In that way you have the right to determine that law for yourselves, but not make up your own law."

Error is predicated upon the statement in *Tom* v. *State*, (1973) 261 Ind. 295, 302 N.E.2d 494 at 495 that, while the trier of facts is the judge of the weight of the evidence and the credibility of the witnesses, "testimony must be accepted in context or rejected." The Appellant contends that the objected to instruction permits the jury to consider evidence out of context, that the jury was thus permitted to disregard the victim's initial description of her knife-wielding attacker, and that the instruction placed complete emphasis on in-court identification and slighted out-of-court identifications exonerating the defendant.

Those contentions are without merit. The instruction on its face says nothing about in-court identifications. It states that the jury is to base its verdict upon evidence presented in court. This would include evidence of out-of-court identifications or descriptions. It was entirely proper for the jury to disregard the victim's initial description of her attacker if it so chose since that evidence had to be considered in the context of testimony that the victim was a bad judge of height and of her in-court identification of the Appellant. Last but not least, it must be pointed out that additional preliminary instructions emphasized that the jury was to consider "all the evidence" (Preliminary Instruction No. 1) and that it should attempt to reconcile conflicting testimony, not disregarding "the testimony of any witness without due consideration and without just cause" (Preliminary Instruction No. 14). Instructions delivered by a trial court are not to be taken separately, but as a whole. *Fuller* v. *State*, (1973) 261 Ind. 376, 304 N.E.2d 305. The instructions here correctly stated the law and we find no error.

The Appellant next contends that the trial court committed reversible error in admitting into evidence testimony regard-

ing the victim's pre-trial identification of the Appellant at a juvenile court lineup. This is based on two grounds: first, the appellant was denied his right to counsel at the lineup; second, the lineup was impermissibly suggestive. Neither argument persuades us.

The Appellant did not maintain at trial that he had been denied counsel at his juvenile court lineup. A defendant cannot give one reason for objection at trial and another on appeal. The latter is waived when not made before the trial court. *Tyler* v. *State*, (1968) 250 Ind. 419, 236 N.E.2d 815. The reason for this is evident here: we are without a record upon which resolution of this issue can be based. Because objection was not made at trial on this ground the trial court was never required to look into the matter. We have only the unsupported assertions of the Appellant to look to and cannot resolve the issue on that basis.

The lineup procedure utilized here was arguably impermissibly suggestive since the victim was told that the suspects would be in the lineup. *Sawyer* v. *State*, (1973) 260 Ind. 597, 298 N.E.2d 440. Moreover, both suspects were in the same lineup. While there were seven individuals displayed, only three fit the general description of one suspect, while four fit the general description of the other. Lineups of three or four individuals are not generally considered adequate and that is what in effect took place here.

Nonetheless, it is quite another thing to say that reversible error results from the admission of the victim's in-court identification or from admission of testimony regarding the lineup itself. A witness's in-court identification of an accused will not result in reversible error if it is supportable by a factual basis independent of erroneous pre-trial identification procedures. *Owens* v. *State*, (1975) 263 Ind. 487, 333 N.E.2d 745; *Sawyer* v. *State, supra*. Here, the victim stated her identification was independent of any pre-trial procedures. Evidence revealed she had an unob-

structed view of her attackers: it was daylight and their faces came within some six inches of hers during the perpetration of the crime. She identified both co-defendants from photographs in a high school yearbook prior to the lineup. Testimony reveals that the prosecutrix looked through several yearbooks and there is no question raised regarding potential suggestiveness of that procedure. The totality of the circumstances indicates the in-court identification of the Appellant was reliable. As such, the admission into evidence of testimony regarding the lineup can only be regarded as harmless error, if error at all.

Finally, the Appellant contends that the trial court erred in admitting into evidence hearsay testimony regarding the Appellant's age. The state was required to show that the Appellant was over sixteen years of age in order to convict him under Count II. Ind. Code § 35-12-1-1, Burns § 10-4709 (Supp. 1975). The state did this through the introduction into evidence of the Appellant's birth certificate. This rendered any error stemming from the admission of the hearsay testimony harmless.

Finding no error, we affirm the judgment of the trial court.

Givan, C.J., Prentice, J., concur; Hunter, J., concurs in result; DeBruler, J., concurs in result with opinion.

## CONCURRING OPINION

DeBruler, J.—I find that I can no longer adhere to the recent construction given Rule 47 (A) of the Indiana Rules of Trial Procedure in *White* v. *State,* (1975) 263 Ind. 302, 330 N.E.2d 84. There we concluded that the rule authorized the trial judge to restrict counsel participation in voir dire examination of prospective jurors to the submission of questions to be put to prospective jurors by the judge. Further consideration of the language and development of the rule prompted by this appeal has demonstrated to me that we were in error in that conclusion.

Our Rule 47(A) provides:

"The court *shall* permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by further inquiry." (Emphasis added.)

Indiana closely patterned this rule after Rule 47(a) of the Federal Rules of Civil Procedure which provides:

"The court *may* permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry *as it deems proper or shall itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper.*" (Emphasis added.)

We did reject two parts of Federal Rule 47(a). The first verb was changed from "may" to "shall" and the last part beginning with "as it deems proper" was dropped entirely. The verb change is of less moment here, but does make the obligation of the trial court to permit the parties and lawyers to participate actively in the jury selection process more imperative.

The lengthy deletion on the other hand is clearly decisive here. Under Federal Rule 47(a), the trial judge, in the event he chooses to conduct the examination himself, must permit counsel to supplement his examination either by directly questioning prospective jurors or by submitting questions to be put to prospective jurors by the judge. In adopting our Rule 47(A), Indiana dropped that part of Federal Rule 47(a) which permitted the trial judge to limit counsel to the submission of questions to be put by the judge, and retained that part which granted the right to counsel to orally question prospective jurors.

Under a correct interpretation of our Rule 47(A), counsel is granted the right to supplement the trial judge's examination of prospective jurors by directly addressing questions

to them. The trial judge has the authority to limit the time and subject matter of such questioning, but he may not preclude it entirely under the rule as I now understand it to be.

Neither can I agree with the statement contained in the majority opinion in resolution of the jury selection issue, that the defendant has a duty to establish that those conducting the jury selection process intended to exclude Black citizens from the jury. The law requires no such proof. *Sanders* v. *State*, (1972) 259 Ind. 43, 284 N.E.2d 751.

NOTE.—Reported at 339 N.E.2d 792.