Johnny TOWNSEND, Jr., and Phillip McCollum, Appellants,

v.

STATE of Indiana, Appellee.

No. 885 S 339.

Supreme Court of Indiana.

Feb. 14, 1989.

Ellen S. Podgor, David H. Nicholls, Pauper Appellate Counsel, Crown Point, for appellant Townsend.

James F. Stanton, Merrillville, for appellant McCollum.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Judge.

Johnny Townsend and Phillip McCollum were tried jointly in the Lake Superior Court, Criminal Division, and were found guilty of the November 28, 1983 murders of Hal and Margaret Fuller. Townsend and McCollum were sentenced to death. The court found as aggravating circumstances that both murders were committed intentionally while the defendants were committing or attempting to commit robbery, and that the murders were committed while having previously committed another murder. Townsend and McCollum appeal directly to this court raising several issues which we consolidate and restate as follows:

1. whether the prosecutor abused his discretion in determining to initiate capital prosecution;

2. whether the court erred in admitting Townsend's statement over his contention that it was not voluntarily made;

3. whether the court erred in admitting the co-defendants' statements;

4. whether the court erred in denying Townsend's motion to suppress evidence seized from McCollum's residence;

5. whether there was sufficient evidence to support the jury's verdict of guilty as to Townsend;

6. whether there was sufficient evidence to support the finding of the existence of aggravating circumstances as to Townsend;

7. whether the death penalty statute is unconstitutional for lack of clear and objective standards to follow in weighing the aggravating and mitigating circumstances;

8. whether the court correctly weighed the aggravating and mitigating circumstances;

9. whether the aggravating factor that the defendant committed another murder is unconstitutional;

10. whether Townsend's sentence was proper;

11. whether McCollum's sentence was proper;

12. whether McCollum received ineffective representation of counsel.

The facts most favorable to the State show that on December 2, 1983, the bodies of Hal and Margaret Fuller were discovered in their Gary home. Mr. and Mrs. Fuller were 65 and 63 years of age respectively. Mr. Fuller had suffered ten stab wounds, and died as a result of one of those wounds which lacerated his lung and his liver. Mrs. Fuller suffered nine stab wounds, fractured ribs, and a cutting wound, and died of those wounds which lacerated the lung and heart. Mr. Fuller's open wallet was found on the floor at his feet. A serrated steak knife which carried human blood was found in the driveway outside the house.

Marchell De Neal and Theresa Santos made a statement to the police on December 3. Theresa Santos was the girlfriend of Johnnie Townsend. Marchell De Neal had been Phillip McCollum's girlfriend. The girls told police that on November 28, 1983, Townsend and McCollum drove them to the house where both Townsend and McCollum lived. The men got a radio and took it to another house, and came out with $20.00 and a bag of marijuana. The girls noticed that Townsend's hand was wrapped

in bandages soaked with blood. Townsend explained the injury by saying he had been in a fight. The car that was being driven matched in appearance the Fullers' car. Townsend drove the girls places until December 2, 1983, when he told Theresa Santos that the car was stolen and the owners were dead. He said he was going to burn the car and destroy the keys. Later, McCollum and Townsend told the girls they had not killed anyone.

On December 4, 1983, a Lake County Sheriff's Police Officer located a car in a rural part of the county. It was a 1979 brown and tan Chevrolet Caprice Classic registered in the name of Margaret Fuller. Latent fingerprints which were identified by an expert witness as belonging to both Johnnie Townsend and Phillip McCollum were found on and in the Fuller car.

The police learned that McCollum and Townsend lived at 1409 East 35th Court in Gary, two blocks away from the Fullers' house. Ms. Willie Mae Donald also lived at that house. She admitted the police and gave them some blood-soaked items of clothing, a knife, a money pouch with coins, other coins, and a cigarette lighter. Ms. Donald indicated there were other items there, and signed a consent to search.

McCollum made a statement to police in which he said he was 18 years old, single, and unemployed. He stated that on November 20, 1983, he was high on drugs and his confederate suggested going to the Fullers' house. McCollum said he did not know the Fullers, but the confederate did, and it was the confederate's idea to kill them. With the confederate, McCollum went to the Fullers' house, where they talked with Mr. Fuller for a while. Then the confederate started stabbing Mr. Fuller before Mr. Fuller began a telephone call to his nephew, Pee Wee. McCollum said he went up and started stabbing Mrs. Fuller. Mrs. Fuller said "please don't kill me," but McCollum told her to shut up and kept on stabbing her. McCollum then stated he went into the kitchen and his confederate asked him to help him with Mr. Fuller. McCollum said, "Okay" and stabbed Mr. Fuller one time in the chest. McCollum

also said that when the confederate started stabbing Mr. Fuller, the drugs and wine caused McCollum's mind to go blank. They did not find any money, but they took a radio, which they later sold. They took the Fullers' car and drove it over a three or four day period.

Townsend also made a statement, in which he said that he and another person went to the Fullers' house. Townsend stated that Mr. Fuller was going to call his nephew "Pee Wee" for him, but when Mr. Fuller picked up the phone, Townsend stabbed him in the back. They wrestled for the knife and in the struggle Townsend was wounded. Townsend stated he stabbed Mr. Fuller in the stomach. Townsend's accomplice was in the other room with Mrs. Fuller. Townsend stated that when his accomplice came back to the kitchen, Mr. Fuller was not dead, and the accomplice "finished him". The two men searched the dresser drawers. Townsend saw that Mrs. Fuller was still breathing, and the accomplice "finished her off". They took a radio, which they later sold for a "dime bag of reefer" and about $25.00. This was after they had picked up Theresa Santos and Marchell De Neal. When they heard that the Fullers' murder was known, they took the car and abandoned it. Townsend admitted it was his idea to rob the Fullers. They took a knife, coins, a lighter, a radio, and two bottles of wine. Townsend identified the coins and lighter recovered from McCollum's house as the ones taken from the Fuller home. Townsend also stated they left their bloody clothing at the accomplice's house.

## I

■ Appellant Townsend claims Prosecutor Jack Crawford abused his discretion in determining to initiate capital prosecution. Townsend asserts Crawford not only employed an arbitrary and capricious manner, but further used a consideration of "race" in violation of Townsend's right to equal protection.

To succeed on an equal protection claim, Townsend must show the existence of purposeful discrimination and he must prove that the purposeful discrimination had a discriminatory effect on him. Thus, he must prove that the decision-makers in his case acted with discriminatory purpose. *McCleskey v. Kemp* (1987), 481 U.S. 279, 282, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262, 278. " '[D]iscriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *McCleskey*, 481 U.S. at 298, 107 S.Ct. at 1769, 95 L.Ed.2d at 282 (citation omitted).

Townsend gives several examples in his attempt to prove the existence of purposeful discrimination. He cites Prosecutor Crawford's filing an information rather than an indictment. He points to Prosecutor Crawford's lack of a written policy on death penalty selection and complains Prosecutor Crawford failed to follow his own stated procedure on death penalty decisions. Townsend claims these examples, in addition to Crawford's statement, evidence his improper use of discretion in choosing to proceed with the death penalty.

■ Townsend asserts that since Crawford filed this case by information as opposed to a grand jury indictment, he chose to deprive the grand jury of the right to compare this case with other murder cases. However, as Townsend acknowledges, an Indiana prosecutor has the discretion to commence a capital case by information rather than indictment. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 94, *cert. denied* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349. Townsend also complains the jury did not have the opportunity to compare this case with other Lake County murder cases. Townsend asserts such a review would have helped them to realize that the facts and the defendant in this case were not of the heinous caliber usually seen in Lake County homicides. He asserts such jury review of murder cases would be unnecessary if a grand jury had previously considered this fact. However, one cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did not re-

ceive the death penalty. *See McCleskey*, 481 U.S. at 306–07, 107 S.Ct. at 1774, 95 L.Ed.2d at 288. Lack of review by the grand jury or trial jury does not show purposeful discrimination.

■■■ Townsend complains of Prosecutor Crawford's lack of a written policy on death penalty selection. However, as Townsend recognizes, Indiana law does not require a written policy for determination of who will be prosecuted with a death penalty charge. Further, there is no constitutional provision prohibiting prosecutorial discretion in charging the death penalty. *See Gregg v. Georgia* (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; *Bieghler*, 481 N.E.2d at 94. Townsend further complains Prosecutor Crawford did not comply with his own stated procedure, but rather arbitrarily applied each criteria. First, Crawford stated his primary criterion is a determination of whether the basic elements of the statute are met. Townsend complains the prosecutor admitted that many Lake County murder cases met the statute for charging the death penalty but were not so charged. However, Townsend's case met the statutory requirements. Second, Prosecutor Crawford stated he considered the feelings of the victim's family on the punishment to be given. While unable to positively state whether or not the family was consulted on the charging of the death penalty, Prosecutor Crawford stated the victims' family had indicated to someone in his office they would like to see a heavy penalty imposed. Third, Prosecutor Crawford stated an examination of the facts was a part of his decision on whether to pursue capital prosecution. However, he was unable to state what facts would constitute a death penalty charge and those which would not. He stated in using his discretion he was able to pick and choose relevant facts to justify a charge of the death penalty. Prosecutor Crawford noted each case has differing factors and he could not base his decision mathematically or on a statistical basis. These allegations do not show that the decision to pursue capital prosecution was arbitrary. The record does not evidence a discriminatory intent.

■■■ Townsend charges the fact that Townsend was black and the victims were black was impermissibly considered by Prosecutor Crawford in bringing the death penalty charge. Prosecutor Crawford testified that the fact that this was a "black on black" crime entered into his decision to proceed with the case. He further testified that one of the factors considered was that more death penalties are imposed where the victim is white versus where the victim is black. He then clarified his remarks, stating that the races of the defendants and the victims were not the reason the death penalty was sought. He said he had read some literature suggesting that there was a nationwide disparity in capital punishment between crimes involving white victims and crimes involving black victims. He felt there should not be any such disparity in his jurisdiction. He further explained that he felt the race of the defendant should make no difference in the imposition of the death sentence or in his office seeking the death sentence. Thus, the record demonstrates Crawford's resolve that the race of defendants and victims shall make no difference in prosecutorial decisions in his jurisdiction. Taken as a whole, Prosecutor Crawford's testimony shows his decisions concerning capital prosecution are made carefully without any discriminatory intent, and that this is also the situation in this case. Townsend fails to show discriminatory intent.

## II

■■■ Townsend argues the trial court erred in admitting his statement because it was not voluntarily made. The admissibility of a statement or confession is controlled by determining, from the totality of the circumstances, whether it was made voluntarily and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *Lyons v. State* (1987), Ind., 506 N.E.2d 813, 816; *Smith v. State* (1986), Ind., 500 N.E.2d 190, 193. The question of voluntariness is a question of fact for the trial court. *Kolb v. State* (1972), 258 Ind. 469, 479, 282 N.E.2d 541, 547. We review

these questions on appeal as we do other sufficiency matters. We do not weigh the evidence or judge the witnesses' credibility, but rather, determine whether there is substantial probative evidence to support the trial court's finding. *Lyons*, 506 N.E.2d at 816; *Lawrence v. State* (1986), Ind., 499 N.E.2d 238, 240.

The evidence concerning the taking of this statement was presented at a hearing on a motion to suppress the statement. Detective Joseph L. Griffin, the sole witness, testified that when Townsend was arrested shortly before 9:00 a.m. he was read his rights and he affirmed he understood them. Townsend was taken to the police station, directly to an interrogation room and booked. He was not kept in another cell nor kept waiting. Before questioning him, Detective Griffin again advised Townsend of his rights, explained the waiver part, reading each sentence of the Miranda form, and explaining to Townsend that if he wished to talk without the services of an attorney he would have to understand each sentence of the rights form. Townsend initialed each sentence. Griffin then began taking the statement at about 9:30 a.m. He had informed Townsend that he was charged with auto theft. The first portion of Townsend's statement denied involvement in the murder. Griffin testified that as the statement went on and he received more information, he advised Townsend that he wanted to question him concerning the homicide. Griffin told Townsend he did not believe what Townsend was telling him, acquainted Townsend with some of the physical evidence that the police had, and told Townsend he should think about it for a while. Griffin left, and returned within an hour. Townsend then gave the incriminating statement. When he was finished, Townsend read and signed the typed statement.

Detective Griffin testified that when the statement was taken Townsend did not appear to be under the influence of alcohol or narcotics. Townsend never asked for an attorney nor stated he wished to remain silent. There were times when Griffin stopped taking the statement to answer phone calls and to look at some of the physical evidence which was located outside of the interrogation room. Griffin testified neither he nor the other officer involved struck or threatened Townsend in any manner.

■ Townsend complains he was kept in a small interrogation room for over a six hour period, from 9:00 a.m. to 3:00 p.m., without food. However, Townsend never expressed any discomfort, hunger or thirst while being interrogated. Further, the record shows Townsend began giving his statement immediately, rather than being driven to it by being kept in the interrogation area.

■ Townsend also complains he was initially told he was charged with auto theft. He asserts his statement motivated the police to change the charge to murder, since the police possessed almost all of the other evidence presented at trial at the time his statement was taken. However, the trial court was justified in finding police did not attempt to induce Townsend's incriminating statement by deceiving him into thinking he was charged only with auto theft. He denied any involvement and did not make a statement about his participation in the murders until after the police told him they were questioning him regarding the homicide. Detective Griffin told Townsend they did not believe his first statement and believed he was involved in the homicide. Griffin then acquainted Townsend with some of the evidence. Thus, this allegation does not show his confession was involuntary.

■ Townsend also asserts he did not have a criminal felony or misdemeanor record, and thus, his prior experience with police officers was limited. He argues his lack of experience with police officers as well as his youth are factors which a court should use in judging the voluntariness of his statement, citing *Smith v. State* (1969), 252 Ind. 425, 249 N.E.2d 493. However, *Smith* states that while a lack of criminal experience is a factor to be considered, it is not complete in itself as an indication of whether a confession was voluntarily given. "The real question is whether, consid-

ering all factors, was he in possession of information at the time to render his confession knowingly and voluntarily." *Smith*, 252 Ind. at 432–33, 249 N.E.2d at 497. The record shows Townsend was informed of his rights multiple times and signed a voluntary waiver form prior to giving the statement. He was apprised of the crime with which he was being charged. There was no evidence of coercion, threats, promises, or violence to induce the statement. There was no evidence of any representation that his co-defendant had confessed. The evidence is sufficient to support the trial court's conclusion that the statement was voluntary.

### III

Townsend and McCollum each claim it was improper for the trial court to admit the statement of the other. Townsend challenges the court's alleged denial of his motion for separate trials, the court's redaction of the statements, and the court's prefatory instruction concerning the statements. McCollum challenges the adequacy of the court's redactions. The record shows that the confessions of both of the codefendants were admitted into evidence in redacted form and that they were substantially the same. There is nothing in either one that would tend to incriminate the other any more than would his own confession.

A defendant may be denied his constitutional right of confrontation if, in a joint trial, the State introduces the extra-judicial admissions of a nontestifying codefendant which implicate the defendant. Because the defendant cannot call the codefendant to the stand for cross-examination, a *Bruton* problem arises (*Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476), and either a separate trial should be ordered or the codefendant's admissions should be redacted to eliminate any references to the defendant. *Richardson v. Marsh* (1987), 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176.

In 1979, *Parker v. Randolph* (1979), 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713, carved out an exception to the *Bruton* rule and allowed use of the nontestifying codefendant's extra-judicial confession implicating the defendant, if (a) the defendant has also confessed and his confession sufficiently "interlocks" with that of the codefendant and (b) the jury is given cautionary instructions that a particular statement may be considered as evidence only as to its maker.

*Parker* was recently overruled in *Cruz v. New York* (1987), 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162. The *Cruz* majority observed it was "illogical, and therefore contrary to common sense and good judgment, to believe that codefendant confessions are less likely to be taken into account by the jury the more they are corroborated by the defendant's own admissions; or that they are less likely to be harmful when they confirm the validity of the defendant's alleged confession." *Cruz*, 481 U.S. at 193, 107 S.Ct. at 1719, 95 L.Ed.2d at 172. "[W]here a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant [in accordance with the rule enunciated in *Lee v. Illinois* (1986), 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514, requiring independent indicia of its reliability], the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." *Cruz*, 481 U.S. at 193, 107 S.Ct. at 1719, 95 L.Ed.2d at 172. The Court thus rejected the "interlocking confession" doctrine first tendered in *Parker v. Randolph*. However,

> the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient "indicia of reliability" to be directly admissible against him (assuming the "unavailability" of the codefendant) despite the lack of opportunity for cross-examination, and may be considered on appeal in assessing whether any Confrontation Clause violation was harmless.

*Cruz*, 481 U.S. at 193–94, 107 S.Ct. at 1719, 95 L.Ed.2d at 172 (citations omitted).

Indiana cases have consistently held that it is harmless error to admit a codefendant's confession where the defendant's own confession has been admitted and does not differ substantially from that of his confederate. *Zachary v. State* (1984), Ind., 469 N.E.2d 744, 748. This conclusion is further strengthened when there exists corroborating testimony and evidence of an appellant's guilt in addition to the similar confessions. *Gutierrez v. State* (1979), 270 Ind. 639, 646–51, 388 N.E.2d 520, 526–28; *Richardson v. State* (1978), 268 Ind. 61, 65, 373 N.E.2d 874, 876. Here, where each defendant's own confession and the other evidence presented at trial clearly established his guilt, and both confessions were substantially the same and were redacted and supported by an instruction to the jury, the admission of the confessions presents no reversible error.

 Townsend asserts the court erred in not granting his motion for separate trials. However, a motion for a separate trial must be made before commencement of trial, except if based on a ground not previously known. The right is waived by failure to make the motion at the appropriate time. *Stovall v. State* (1985), Ind., 477 N.E.2d 252, 254; IC 35–34–1–12(a). As Townsend did not file a motion for separate trials prior to commencement of trial and any subsequent motion was not based on a ground not previously known, he waived the right to severance.

 Townsend complains of the court's redaction of the confessions over his objection that if the court chose to admit the confessions, they should be admitted unchanged. The court read the statements using the words "blank", "other person", or "another person" when either of the codefendants' names were mentioned in the individual's statement which was being read. Townsend argues that the court has provided to the jury material for review that was not accurate, and claims the court's method of redacting makes the statement confusing, unintelligible, and gives the jury a highlighted effect of the defendants actions. Trial courts frequently redact or excise inadmissible matter

from statements and other evidence. The court's redactions here were not improper.

 Townsend also objects to the court's limiting instruction in explanation of the redactions. Townsend's counsel requested that if the court chose to read the redacted confessions to the jury, then there should be no prefatory instruction given pertaining to the deletions as it would call this matter to the jury's attention. However, the court gave the following prefatory statement:

> Once again, I wish to admonish the jury that a statement of a defendant has been admitted into evidence in this case and can be considered as evidence by the jury as evidence against the declarant ... The jury shall not consider said statement against another defendant. Any time there is a reference to any other person, the word 'another person' or 'blank' will be used.

Townsend contends that caselaw specifically provides that a judge may not invade the province of the jury by providing that jury with an instruction which highlights the testimony of one witness. However, where evidence is admissible only for a limited purpose, it is necessary, and not an undue highlighting of evidence, for the court to instruct the jury as to such limitations. Townsend presents no reversible error here.

McCollum's argument goes to the adequacy of the redactions. He asserts that where "blank" and "the other person" were inserted in place of his name in Townsend's statement, this was not an effective redaction because no one on the jury could have believed that "blank" was anyone other than McCollum. However, as we find that admission of the statements presents no reversible error, any error in the method of redaction used here is harmless beyond a reasonable doubt. *See Gutierrez*, 270 Ind. at 646–51, 388 N.E.2d at 526–28.

## IV

 Townsend claims the court erred in denying his motion to suppress evidence, including several items of cloth-

ing, a knife, a money pouch, and a gold cigarette lighter, because these items were seized by the police from McCollum's residence without a warrant. However, a valid consent to search obviates the need for a warrant. *Stallings v. State* (1987), Ind., 508 N.E.2d 550, 552. In reviewing a trial court determination of the validity of a search, the standard of sufficiency of evidence is used. *Id.; Brooks v. State* (1986), Ind., 497 N.E.2d 210, 215.

Here, the challenged items were given to police by Willa Mae Donald, who lived in the house leased by Eddie McCollum, Appellant McCollum's father. In addition to Willa Mae Donald, persons who lived in the house include Phillip and Eddie McCollum, Maurice McCollum, and Townsend. Eddie McCollum testified he let Townsend sleep on the living room couch while Townsend was waiting to join the Marines. Townsend left his belongings in Phillip McCollum's bedroom. Willa Mae Donald admitted the police to the residence and consented to their search. A police officer testified Willa Mae Donald said she generally did all the laundry and that the particular items of clothing had been given to her to wash. This is sufficient evidence from which the trial court could reasonably find that the area from which Willa Mae Donald took the items and for which she gave consent to the police to search were areas where she, as a resident, was authorized to give consent. Since Willa Mae Donald provided the police with a valid consent to search the house, there is no error by the trial court in denying the motion to suppress and in permitting the admission of the evidence. *See Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1123.

Townsend further asserts the court erred in admitting his statement over his contention that the statement was the fruit of the allegedly unlawfully seized evidence. As the evidence was properly seized, Townsend's contention that these items were an inducement to him to provide police with the statement presents no reversible error.

## V

Townsend claims the evidence is insufficient to support the jury's verdict finding him guilty of the murders of Hal and Margaret Fuller because the evidence fails to show his intent to kill the Fullers or his actual participation in the killing of Margaret Fuller. Townsend asserts there is insufficient evidence to support the intent element because there is direct evidence that the killing was carried out by McCollum. Townsend asserts that since McCollum was in a room with Margaret Fuller and Townsend had no knowledge of what was occurring in that room, he cannot be found guilty of intentionally killing her. With respect to Hal Fuller, Townsend also asserts that the only wounds attributable to him did not cause Mr. Fuller's death.

 However, an accomplice is criminally liable for acts done by his confederate which were a natural and probable consequence of their common plan. *Johnson v. State* (1986), Ind., 490 N.E.2d 333, 334. It is unnecessary that an accomplice act out each element of the offense. *Stroud v. State* (1983), Ind., 450 N.E.2d 992, 996. The acts of one accomplice are imputed to all others. *Pack v. State* (1985), Ind., 486 N.E.2d 994, 995. Participation in the crime may be inferred from a defendant's conduct before and after the crime. *Harris v. State* (1981), Ind., 425 N.E.2d 154, 156. As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed. 2d 105.

 The trial court stated in its Findings and Judgment:

The testimony showed that the Defendant [Townsend] and his co-defendant entered the residence of Hal Fuller and Margaret Fuller, an elderly couple, and that entrance was gained because the Defendant was known to the Fullers and on a ruse perpetrated on them by the

Defendant. Once inside the residence, after a short time, the Defendants separately, but almost simultaneously began to attack the Fullers with small steak knives. Defendant Townsend attacked Hal Fuller in the kitchen, while his co-defendant attacked Margaret Fuller in the bedroom. Both victims were killed, their deaths caused by multiple stab wounds lacerating vital organs. There was evidence that the co-defendant also inflicted one stab wound on victim Hal Fuller; and that the original plan to rob the Fullers in their home was conceived by Defendant Townsend. The evidence further showed, at least circumstantially, that the defendants found it necessary to kill both Hal and Margaret Fuller in order to escape criminal prosecution.

It is inferable from the record that the two men went to the Fuller house with the express purpose of robbing the elderly couple. Since one of the accomplices was known by sight to the Fullers, the accomplices felt they would have to kill the Fullers to escape arrest. They armed themselves and both stabbed the Fullers. Both clearly united in common action to rob and kill the Fullers. The evidence is sufficient to support the convictions.

## VI

Townsend claims the evidence was insufficient to support the finding of aggravating circumstances to support the jury's verdict in the death penalty phase of trial. The court found there was a sufficient basis for aggravation and imposition of the death sentence in that Townsend had committed another murder, namely, the killing of Margaret Fuller as to the count concerning Hal Fuller and the killing of Hal Fuller as to the count concerning Margaret Fuller. Townsend asserts that although he may have participated in the robbery, there is no evidence of his participation in the killing of Margaret Fuller nor of causing the fatal wounds to Hal Fuller. Townsend thus asserts it was improper for the court to permit the jury to consider the aggravating factor of committing another murder and intentionally killing the victims while committing or attempting to commit a robbery.

Townsend correctly asserts that in assessing liability for capital punishment in a jointly committed crime, accomplice liability is not enough. The focus must be on the individual culpability of the defendant. Townsend relies on *Enmund v. Florida* (1982), 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140. However, while *Enmund* states that capital sentences must rest on individual culpability, *Enmund* did not restrict capital punishment to the actual killer in a jointly conducted murder. For punishment to be precluded on *Enmund* grounds, it must be the case that the defendant neither took a life, attempted to take a life, nor intended to take a life. *See also Resnover v. State* (1984), Ind., 460 N.E.2d 922, 935, *cert. denied* 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160. Major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement. *Tison v. Arizona* (1987), 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127.

Townsend contends he did not stab Margaret Fuller, his accomplice struck the fatal blow against Hal Fuller, and his participation in the robbery was minor. However, the facts support the inference that Townsend planned to rob the Fullers, must have intended that they should be killed to prevent the robbers' identification by them, and initiated a stabbing attack on Hal Fuller simultaneously with McCollum's similar attack on Margaret Fuller. There were facts from which to infer that Townsend intended to commit robbery, intended to join in the murders of both Hal and Margaret Fuller, and acted in concert with McCollum to do so. He had the culpability to be considered for the death penalty. The evidence supports the finding of both aggravating circumstances. Thus, it was not error for the trial court to submit the issue to the jury, or to find capital eligibility beyond a reasonable doubt.

## · VII

Both Townsend and McCollum claim the death penalty statute, IC 35–50–2–9, is unconstitutional for lack of clear and objective standards to consider the death sentence. Both appellants argue the death penalty statute does not give specific guidance as to how to weigh the aggravating and mitigating circumstances, and impermissibly requires a subjective determination of whether aggravating circumstances outweigh mitigating circumstances resulting in an arbitrary and capricious imposition of the death penalty. They also claim there is no objective standard on which a capital decision can be reviewed. Townsend further alleges the court has not considered him in comparison to other cases in order to provide consistent application of the death sentence. This court has previously addressed this contention and found Indiana's sentencing procedure gives clear and specific guidance to the sentencing authority and adequately protects each individual's constitutional rights. *See Williams v. State* (1982), Ind., 430 N.E.2d 759, 765, *appeal dismissed* 459 U.S. 808, 103 S.Ct. 33, 74 L.Ed.2d 47, *reh. denied* 459 U.S. 1059, 103 S.Ct. 479, 74 L.Ed.2d 626.

## VIII

Both Townsend and McCollum claim the mitigating circumstances were not outweighed by the aggravating circumstances. Townsend claims the trial court erred in finding the aggravating circumstances outweighed the mitigating circumstances, arguing: 1) it was error to impose the death sentence on the finding of the aggravating circumstances charged, 2) the court failed to place adequate weight on the mitigating factors of his age and lack of prior criminal record. McCollum challenges the weight and credibility of the evidence.

Townsend complains the aggravating circumstances found by the trial court should not be considered as aggravating factors because they are the basis for bringing the charging information and are the point from which other aggravating factors are to be examined. The aggravating factors applied to Townsend include: 1)

committing an intentional killing while committing or attempting to commit a robbery, and 2) having intentionally killed Hal Fuller, having committed another murder, that of Margaret Fuller, and having intentionally killed Margaret Fuller having committed another murder, that of Hal Fuller. These factors are matters to be considered in addition to the elements of the crime, which work toward aggravation of the sentence, as set forth in IC 35–50–2–9(a) and (b). IC 35–50–2–9(a) states, "The state may seek a death sentence for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b)." The two factors found as aggravating circumstances are set forth in IC 35–50–2–9(b)(1) and (8). The State strictly complied with the statute. No error is presented here.

[30] Next Townsend complains the court impermissibly discredited the mitigating factors. Townsend asserts a strict numerical weighing necessitates reversal of the death sentence because three mitigating factors outweigh two aggravating factors. Specifically, Townsend claims the court discredited the factor of "age of the defendant" by focusing on the infliction of painful injuries and mental trauma on the victims before their death. At sentencing the trial judge stated he considered Townsend's youth as a potentially mitigating factor, but not of substantial weight because of the nature of the killing. From this we cannot conclude that he refused to consider age a mitigating factor. *See Spranger v. State* (1986), Ind., 498 N.E.2d 931, 946, *reh. denied* 500 N.E.2d 1170, *cert. denied* 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536.

McCollum also challenges the trial court's weighing of the aggravating and mitigating circumstances. McCollum disputes the finding there was no evidence he was under extreme mental or emotional disturbance when he committed the murders because there was evidence that he had been drinking excessively since he was 14 years old, was drinking wine and smoking marijuana at the time of the murders,

and was borderline mentally retarded. He also claims the findings did not correctly determine whether he was under the influence of an intoxicant so as to substantially impair his capacity to conform his conduct to the requirements of law. McCollum claims the evidence of various psychological and psychiatric reports, and the pre-trial investigation report, were unprofessional or unreliable. However, this court will not redetermine this evidence. In reviewing the sufficiency of evidence, this court will neither reweigh the evidence nor determine the credibility of the witnesses. *Moore v. State* (1985), Ind., 479 N.E.2d 1264, 1276, *cert. denied* 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565. There is sufficient evidence to support the trial court's findings of fact concerning the factors used to determine McCollum's sentence. The written findings show these factors were used to make an individualized determination of the sentence as required by law.

## IX

■ Townsend challenges the constitutionality of the aggravating circumstance established by IC 35–50–2–9(b)(8), that the defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder. IC 35–50–2–9(b)(8) may not be applied when the additional murder is unrelated to the instant murder and has not been reduced to a conviction. *State v. McCormick* (1979), 272 Ind. 272, 277–78, 397 N.E.2d 276, 280. That is not Townsend's situation since he was convicted here of two related murders. Townsend's case therefore is similar to *Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95, wherein we found valid and applied IC 35–50–2–9(b)(8). *See also Moore*, 479 N.E.2d at 1274.

Townsend asserts that consideration of the aggravating circumstance of multiple related murders with the distinction between unrelated and related murders found in *McCormick* deprives him of equal protection. He claims that holding this factor inapplicable to a class of individuals to whom it was intended and by the wording of the statute clearly applies, is inconsistent and finds a class of less culpable defendants, like Townsend, being subject to the death sentence.

The State submits the distinction between multiple murderers whose crimes can be tried in a single trial because they are factually related and those whose crimes cannot be tried in a single trial without violating due process rights is a principled one. The statute provided two specific aggravators for three classes of multi-murderers: 1) those already convicted of another murder, 2) those not already convicted but who committed another murder so unrelated that it could not be tried jointly with the principle charged murder, 3) those not already convicted but who committed another murder sufficiently related that joint trial is permissible. This court in *McCormick*, noting that the penalty phase of a capital case is a trial of given issues on the standard of "beyond a reasonable doubt," correctly held that this would make the trial of the second murder of persons in class (2) of the list above too much like a second primary guilt trial to permit it to be heard by the same jury. Thus, it removed that class from the ability to be prosecuted under IC 35–50–2–9(b)(8).

Townsend's point is premised on the notion that it is impermissible to exempt this middle class from capital liability, and that (b)(8) is unconstitutional as failing to establish a principled distinction between these two types of multi-murderers. However, even if *McCormick* exempts this group of offenders from capital punishment, the State submits and we agree that it is not unprincipled to divide this class into those persons who can be prosecuted under (b)(8) and those who cannot without due process violation. Further, as the State points out, the effect of *McCormick* is not to remove this group of multi-murderers from capital eligibility. They can still be eligible for the death penalty if tried for the first murder, and then tried in a second trial for the second murder with the conviction for the first murder used as the aggravator under IC 35–50–2–9(b)(7). Thus, this class of murderers can still be eligible for capital punishment. The trial court did not err in permitting the jury to consider the aggra-

vating circumstance of whether Townsend committed more than one related murder and in confirming the jury recommendation of death on this count.

## X

Townsend claims his sentence is improper due to the trial court's failure to determine the proportionality of the punishment in this case in relation to other capital cases. He further claims the trial court erred in considering it his duty to be bound by the jury's recommendation of capital punishment, thereby ignoring the requirement to conduct a proportionality review and to make a determination whether the jury's recommendation was the result of passion and prejudice.

■ Townsend charges the law requires a conscious specification by the trial court that it has examined this case in comparison with similar death penalty cases. He claims the trial court must justify its decision in light of similarly situated defendants or cases. However, the trial judge is not required to conduct a detailed comparison of the instant case with other similar cases. *See Pulley v. Harris* (1984), 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29; *Burris v. State* (1984), Ind., 465 N.E.2d 171, 191–92, *cert. denied* 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. Indiana's death penalty statute requires that the trial court weigh factors in aggravation and mitigation and enter a specific record of its reasoning, which is automatically reviewed by this court. This process has been adjudged sufficiently tailored to ensure the death penalty is not arbitrarily or disproportionately imposed. *Van Cleave v. State* (1987), Ind., 517 N.E.2d 356, 373; *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, 1052–53, *cert. denied* 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699. Thus, the trial court did not err in failing to compare this case to similar cases.

■ Townsend claims there is no indication the trial court made an independent judgment that there was a basis in fact to support the jury decision, and merely imposed the death sentence because it felt duty bound by the jury's recommendation.

Townsend complains the court did not acknowledge its choice in applying the death penalty under IC 35–50–2–9. However, this argument is a misreading of the trial court's statement. The court explained its finding that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. The court stated it found the jury recommendation to be proper and lawful and that "... the Court has a duty to follow such recommendation." This is not a statement that the trial court felt bound to a duty to follow whatever the jury recommended. Rather, the duty expressed was that since the judge determined independently that the imposition of the death penalty was proper and lawful based on the facts of this case, he had a duty to impose it. The record of the judge's findings show that his review of the facts was independent, and not a mere rubber stamping of the jury. He stated his awareness of his power to issue a different sentence if his review of the facts showed that the death penalty was improper or unlawful.

Townsend also complains the court did not consider his sentence to determine if it was the product of juror's passion and prejudice. This allegation is not supported by the record. At sentencing, the trial court recited the facts that make both his and the jury's determination proper and lawful. The sentencing recommendation and the judge's findings are proper and are supported by facts of record.

## XI

McCollum claims the sentence applied to him was improper because it was based on incomplete or unreliable evidence. He claims the defense presented very little for the judge's consideration and nothing by the various psychological and psychiatric reports that was reliable because of their uncertainty and incompleteness.

■ This court will exactingly review the facts of record which support the sentence, but will not make a *de novo* determination of sentence. *Spranger*, 498 N.E.2d at 947 n. 2. McCollum fails to show more

than his personal displeasure that some of the reports presented first stated an objective test result and then stated the preparer's professional opinion that he obtained indications that McCollum had been able to exaggerate the degree of mental or substance abuse impairment he suffers. This is not evidence that is improper or unprofessional to include in mental evaluations. Further, it is not clear that the jury and judge would consider it relevant even if McCollum possessed the type of psychological and psychiatric report he would desire. As set out in issue X above, there was sufficient evidence to support the trial court's findings concerning McCollum's sentence.

### XII

McCollum claims he received ineffective assistance of counsel at trial. He raises several instances of ineffective assistance, which we consolidate as follows:

1. both defendants were represented by attorneys from the public defender's staff;

2. trial counsel failed to move for severance even though Townsend's confession was extremely damaging to McCollum;

3. trial counsel failed to make any effective argument to the jury at either the guilt or penalty stage;

4. trial counsel failed to prepare for either the penalty or sentencing stage.

■ Judicial scrutiny of an attorney's performance is highly deferential. The standard for counsel's performance is that of reasonably effective assistance. To prevail on his claim, McCollum must show that his attorney's performance was deficient and that the defense was prejudiced by the deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Jones v. State* (1986), Ind., 495 N.E.2d 532, 534.

■ McCollum first claims representation of these two defendants by lawyers from the public defender's staff who were consulting with each other, when the defendants were pursuing strategies of shifting the blame to each other, was an impermissible conflict of interest requiring reversal. He also complains that Townsend's lawyer called McCollum as a witness at trial. However, permitting a single attorney to represent codefendants is not *per se* violative of constitutional guarantees of effective assistance of counsel. *Holloway v. Arkansas* (1978), 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 433. The possibility of prejudice which arises when there is multiple representation does not require an inflexible rule that presumes resulting prejudice. *Burger v. Kemp* (1987), 483 U.S. 776, ——, 107 S.Ct. 3114, 3120, 97 L.Ed. 2d 638, 650. Prejudice will be presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. *Id.* McCollum fails to cite any factual matter in which such a conflict resulted in any action or inaction alleged to have been harmful to him. He makes no contention of any factual basis on which it can be concluded that the employment of both counsel by the same county public defender's office represented a conflict which adversely affected the performance of his counsel. Lake County has one public defender's office. It will frequently be the case that codefendants will be represented by different members of that office, even when strategies of shifting blame to the other are formulated. Absent any showing of a sharing of confidences or any evidence of strategy decisions being made in deference to the associate's interests, there is no reason to presume that such representation as occurred here was improper or ineffective.

■ McCollum next claims his trial counsel was ineffective because he failed to move for severance before commencement of trial, although the conflict between the defendants was obvious from their confessions. However, at the hearing on the Belated Motion to Correct Error, McCollum's trial counsel stated his strategy for failing to so move. Trial counsel felt that

Townsend's unredacted statement, which would be admitted if there were separate trials, would be more damaging than the version admitted. Also, he felt, as his co-counsel evidently also felt, that were both defendants' statements to be heavily redacted to eliminate all reference to the other, then his client's statement would describe two complete fatal knife attacks by himself on both victims, and thus would be much more damaging than the instant situation of lightly redacted statements, where McCollum would be describing acting on the idea of his confederate. He stated he was prepared to move for a severance if his motion to suppress McCollum's statement had been successful. Trial counsel had a justifiable basis for his strategic decision not to sever the cases. This allegation will not support a finding of ineffective assistance of counsel.

■■ McCollum further alleges counsel was ineffective in failing to make effective argument to the jury in the guilt and penalty phases of trial. McCollum states his trial counsel might have made strong arguments based on the mitigating circumstances, including those found in IC 35–50–2–9(c) that he had no significant history of prior criminal conduct, he was under the influence of extreme mental or emotional disturbance, he acted under the domination of another, and he was impaired from intoxication. McCollum complains his trial counsel failed to argue that the mitigating factors must be outweighed by the aggravating factors beyond a reasonable doubt. However, trial counsel made a strategy decision to not re-emphasize the brutal attacks on the Fullers by repeating them, even for the purpose of singling out Townsend as the mastermind. He decided reiteration of the factual argument would be tantamount to arguing the prosecution's case. Instead, he sought to emphasize the distance between defendants through the evidence, and in the penalty phase to humanize McCollum, and to appeal to the inherent distaste of an average person in contemplating putting another to death. The State submits that on the facts present here, it was better to attack the death penalty *per se* than to argue that youth,

voluntary intoxication, a history of alcoholism, or the contention that Townsend was the leader would be an effective mitigation plea to the jury. In any case, trial counsel employed a defensible strategic decision in the circumstances and will not be found ineffective for so doing.

■■ Finally, McCollum alleges trial counsel was ineffective because he failed to adequately prepare for the penalty and sentencing phases of trial. McCollum asserts trial counsel had a duty to make reasonable investigations or to make a decision that investigations were unnecessary. McCollum complains his trial counsel only presented his father as a mitigation witness during the penalty phase. McCollum complains trial counsel failed to confer with him after January 3, 1985, two weeks before the trial, and failed to confer with anyone after the evidence stage and before the penalty stage. McCollum asserts trial counsel should have shown McCollum had a history of alcohol and drug abuse. McCollum states counsel should have conferred not only with his father and brother, but also with his other siblings and his mother as McCollum had lived with her for most of his life. McCollum complains little more in mitigation was presented during the sentencing phase. McCollum testified briefly, answering two questions concerning his drinking history. However, he complains he was not questioned concerning his alcohol or drug addiction, nor concerning his attempt prior to the killings to get help for his alcoholism. The sentencing court considered McCollum's psychological and psychiatric evaluations made at the Indiana Diagnostic Center after he was convicted. They were made known to defense counsel only hours before sentencing. No inclination to contest them was apparent even though the evaluations were admittedly based on inadequate and incomplete testing, yet offered opinions on McCollum's character and culpability. For the hearing on the Belated Motion to Correct Error, appellate counsel found an expert witness in the jail counsellor who gave evidence about McCollum's alcoholism and an opinion concerning this effect on McCol-

lum and his actions. Also introduced into evidence at this hearing was McCollum's medical jail record which showed he had been admitted to the jail as an alcohol addict in withdrawal. Wayne McCollum, McCollum's brother who was a security officer and part-time policeman, was also called as a witness who should have been called at the penalty phase for evidence that McCollum had had severe drinking problems and family upheaval throughout his life. He also testified that McCollum and his father had not had a good relationship.

However, the record shows trial counsel expected to have three mitigation witnesses. He anticipated McCollum's father and brother would testify as to his family and substance abuse problems. This would be corroborated by the minister's testimony. Counsel did not observe any indications of lowered mental ability adequate in his judgment to support a defense on diminished capacity. Nothing in the available statement showed he would be likely to prevail in an insanity defense or in presenting the mitigating circumstance of a lesser degree of impairment by reason of mental disease or defect. Also, McCollum could clearly remember his actions. His confession lacked any indication of impairment due to voluntary intoxication that would persuade a jury to excuse or mitigate the seriousness of the offense. Aside from a self-serving statement that he "blanked out" when his confederate started knifing Mr. Fuller, after which he nevertheless clearly described much of what happened, trial counsel had nothing on which to justify taking the risk of having his client see psychiatrists or psychologists, to whom he might make even more inculpatory statements. Thus, counsel justifiably decided to rely on the two relatives and a minister. Unfortunately, the second relative was unavailable due to illness, and the minister decided at the last minute that he could not participate. That witnesses are sometimes not as effective as one might hope, or become unavailable through illness, does not in hindsight show that decisions to use them were unprofessional.

Regarding trial counsel's failing to find the evidence that could have been presented about McCollum's alcoholism by a jail counselor and from jail records, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or an adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Burger*, 483 U.S. at ——, 107 S.Ct. at 3123, 97 L.Ed.2d at 654. In considering claims of ineffective representation of counsel, the court should address not what is prudent or appropriate, but only what is constitutionally compelled. *Id.* at ——, 107 S.Ct. at 3125–26, 97 L.Ed.2d at 657. The *Burger* Court concluded that reasonable professional judgments might support limitations on investigation. *Id.* ——, 107 S.Ct. at 3126, 97 L.Ed.2d at 657. In *Burger*, where counsel did interview all potential witnesses that were brought to his attention and there was a reasonable basis for a strategic decision that an explanation of defendant's history would not have minimized the risk of the death penalty, it was concluded that counsel reasonably determined he need not undertake further investigation for witnesses to make statements about Burger's past. *Id.* There was little chance here of prevailing on such arguments as a voluntary intoxication defense or a defense based on the proposition that McCollum had had family troubles and had dropped out of school. Thus, a professional decision not to pursue evidence to support them is a defensible one.

McCollum has failed to show he was prejudiced by his trial counsel's performance. The evidence here was overwhelming. The victims were a helpless older couple. They were brutally assaulted in their home and died painfully from multiple wounds inflicted by steak knives with serrated edges. They seemingly did nothing to provoke or resist the robbers. They were killed for a pitifully small amount of property. Both defendants' fingerprints were found on the car they stole from the murdered couple. They admitted the killing to their girlfriends. They made detailed confessions. McCollum confessed to

personally stabbing both victims. The State proved beyond a reasonable doubt McCollum's guilt and the existence of three aggravating circumstances: that both murders were intentionally committed in the robbery, and that McCollum was a multiple murderer. In mitigation, McCollum proposes nothing more than that he was only eighteen, he voluntarily intoxicated himself, he was not intelligent, and he had family troubles. A professional decision that these were unlikely to have had any significant result on the jury deliberations, and instead to proceed with a general attack on the morality of the death penalty is not an unreasonable one, and cannot be said to have decreased the reliability of the result here. Accordingly, no basis is shown to reverse on the grounds of ineffective representation of counsel.

■ Finding no error in the convictions here, we are obliged by statute to determine whether the death penalty is appropriate considering the nature of the offense and the character of the offenders. After the hearing on the death sentence, the trial court stated:

"The defendant, Johnnie Townsend was found guilty of Murder by knowingly or intentionally killing Hal Fuller and of killing Hal Fuller while committing or attempting to commit Robbery as charged in Counts I & II of the Information in this cause; [t]he defendant was also convicted of the Murder of Margaret Fuller by knowingly or intentionally killing Margaret Fuller and of killing Margaret Fuller while committing or attempting to commit Robbery as charged in Counts V & VI. At the sentencing hearing, the burden was on the State of Indiana to prove beyond a reasonable doubt that the murders were intentionally committed during the perpetration or attempted perpetration of a Robbery as set forth in Counts III & VII; and/or to prove that the defendant had intentionally killed Hal Fuller having committed another murder, that of Margaret Fuller as alleged in Count IV and that the defendant intentionally killed Margaret Fuller having committed another murder, that of Hal Fuller, as alleged in Count VIII. The State moved to incorporate by reference the testimony and evidence presented in the first stage of the trial, which motion was granted. The testimony showed that the defendant and his co-defendant entered the residence of Hal and Margaret Fuller, an elderly couple, and that entrance was gained because the defendant was known to the Fullers and on a ruse perpetrated on them by the defendant. Once inside the residence, after a short time, the defendants separately, but almost simultaneously, began to attack the Fullers with small steak knives. Defendant Townsend attacked Hal Fuller in the kitchen, while his co-defendant attacked Margaret Fuller in her bedroom. Both victims were killed, their deaths caused by multiple stab wounds lacerating vital organs. There was evidence that the co-defendant also inflicted one stab wound on the victim Hal Fuller; and that the original plan to rob the Fullers in their home was conceived by the defendant Townsend. The evidence further showed, at least circumstantially, that the defendants found it necessary to kill both Hal and Margaret Fuller, in order to escape criminal prosecution. After the stabbing of the victims, the defendant searched the house and took items of value therefrom as well as the Fuller's automobile which was parked outside, with this defendant driving the automobile. Accordingly, the jury was justified in finding beyond a reasonable doubt the existence of the aggravating circumstances of an intentional killing of the victims while committing or attempting to commit Robbery and that the defendant committed another murder. In reviewing the seven possible mitigating circumstances considered by the jury, the Court finds: 1. The defendant had no significant history of prior criminal conduct; and this fact was made known to the jury in the sentencing state [sic] of the proceedings. This is a mitigating circumstance which must be weighed against the aggravating circumstances. 2. There was no evidence that the defendant was under extreme mental or emotional disturbance when he committed the murders. At the oral request of Defendant's counsel, the Court ordered that the defendant receive a pre-sentence examination and evaluation by the staff of the Indiana Reception and Di-

agnostic Center in addition to the pre-sentence report in this cause. The psychological evaluation of the defendant shows that there is no history or evidence of any psychotic thought content or processes. That there is no psychosis of any kind. That the defendant is functioning at the average or normal range of intelligence; and that he showed an excellent memory for the details of the offenses. The defendant testified that he did consume intoxicants on the date of the offense, but also that he and his co-defendant planned to rob the Fullers, discussed those plans and armed themselves with the eventual murder weapons before walking over to the Fuller household. The defendant's memory of detail was good as was his ability to carry out the criminal enterprise, both before and after the murders. 3. The evidence shows that the victim Hal Fuller was 65 years of age, five feet, six inches tall, weighed one hundred forty-five pounds and that Margaret Fuller was 63 years of age, five feet, seven inches tall, and two hundred and sixty pounds; and that each was somewhat infirm. The victims were in their own home at the time of the offense, and did not participate in nor consent to the defendant's conduct in any way. 4. The evidence showed that the defendant and his co-defendant acted in union in the commission of these offenses. It was the idea of defendant Townsend in the first place to rob the Fullers. Both defendants entered the house and, once inside, each demonstrated a penchant to participate in violent crimes. The actions of this defendant were the proximate cause of the death of Hal Fuller, although the coroner was unable to say which stab wound of many actually caused the death. As to the victim Margaret Fuller, the evidence showed that her death resulted after the defendants united in the commission of these offenses and that the defendants acted in union in the killing of each victim in the perpetration or attempted perpetration of a Robbery. Although Margaret Fuller was killed by the co-defendant, the evidence showed beyond a reasonable doubt, not only that the defendants acted in union, but that the defendant Townsend intended deadly force he used against both victims. 5. There was no evidence of any kind that the defendant was under substantial demination [sic] of the co-defendant or any other person. 6. Defendant did not file a plea of insanity nor did he file a plea alleging lack of comprehension. The defendant testified that he had consumed intoxicants on the date of the offense, but his confession, testimony and aforementioned statements to the psychiatrist at the Reception and Diagnostic Center illustrate an excellent memory for the details of these offenses and the defendant's actions immediately thereafter. In addition, the actions taken by the defendant calculated to avoid detection and arrest in this cause, such as throwing away the knife used in the homicide, having his bloody clothing washed, efforts to abandon the stolen car of the victims, and the defendant's original statement to the police denying any knowledge of the murders show the defendant did have the capacity to appreciate the criminality of his conduct, and there is no evidence that this was substantially impaired as a result of mental disease or defect or of intoxication. 7. The only other significant circumstance which the jury and the Court must have and do consider is the defendant's age, which is currently twenty-one years of age and nineteen years of age at the time of the commission of these offenses. However, there is no evidence that the defendant was emotionally disturbed or unable to appreciate the wrongfulness of his conduct. The defendant appears intelligent and rational. In addition, the nature of the killings shows an unprovoked attack on elderly persons with samll [sic] knives inflicting painful injuries and physical and mental trauma on the victims before their deaths. The capability of such actions in the mind of one the age of this defendant diminishes the mitigating factor of his age. In conclusion the Court finds beyond a reasonable doubt that the aggravating circumstances of the intentional killings of the victims while committing or attempting to commit Robbery and the defendant having participated in the commission of two murders outweigh the mitigating circumstances stated above. Accordingly, the court finds

the jury recommendation to be proper and lawful and that the Court has a duty to follow such recommendation. The Court, therefore, in conclusion enters it's [sic] findings and reasons for the imposition of the death penalty as aforementioned. The Court having found the jury recommendation to be reasonable and lawful, and having prepared these detailed reasons for the imposition of the death penalty, it is hereby the Judgment of this Court that the death penalty be imposed; that the defendant be transferred to the custody of the warden of the Indiana State Prison at Michigan City, Indiana, to be confined therein. The law providing that appeal of this sentence by the Indiana Supreme Court is mandatory, the defendant[']s trial counsel is ordered to file the appropriate motions to correct errors as provided by law. The law requires that a date be set for the imposition of the sentence, and I will do so knowing that that date is because of the appeal process probably not operative. I will set that date one hundred (100) days after the ruling of the Indiana Supreme Court is final, provided that the ruling of that Court is to affirm the conviction and penalty imposed in this cause."

With regard to McCollum, the court stated:

"We are ready to inform you of the Court's findings in this case of the State of Indiana versus Phillip McCollum. The defendant, Phillip McCollum, was found guilty of murder by knowingly or intentionally killing Hal Fuller and of killing Hal Fuller while committing or attempting to commit Robbery as charged in Counts I & II of the Information in this cause; the defendant was also convicted of the Murder of Margaret Fuller by knowingly or intentionally killing Margaret Fuller and of killing Margaret Fuller while committing or attempting to commit Robbery as charged in Counts V & VI. At the sentencing hearing the burden was on the State of Indiana to prove beyond a reasonable doubt that the murders were intentionally committed during the perpetration or attempted perpetration of a Robbery as set forth in Counts III & VII; and/or prove that the defendant had intentionally killed Hal Fuller having committed another murder, that

of Margaret Fuller as alleged in Count IV and that the defendant intentionally killed Margaret Fuller having committed another murder, that of Hal Fuller, as alleged in Count VIII. The State moved to incorporate by reference the testimony and evidence presented in the first stage of the trial, which motion was granted. The testimony showed that the defendant and his co-defendant gained entrance to the residence of the victims, an elderly couple, and that entrance was gained through a ruse perpetrated by the co-defendant who was known to the Fullers. In defendant McCollum's case, there is a [sic] direct evidence that the murders was [sic] well as the Robbery were planned before entering the house, to prevent the victim's identification of the defendants. Once inside the residence, after a short time, the defendants separately, but almost simultaneously, began to attack the Fullers with small steak knives brought to the residence for that purpose. This defendant attacked Margaret Fuller in her bedroom stabbing her to death. This defendant also entered the kitchen area and assisted defendant Townsend, who had difficulty killing Hal Fuller because defendant Townsend's hand had become cut in the struggle. This defendant did so by stabbing Hal Fuller a final time in the chest area. After the stabbing of the victims, the defendant searched the house and took items of value therefrom as well as the Fuller's automobile which was parked outside. Accordingly, the jury was justified in finding beyond a reasonable doubt the existence of the aggravating circumstances of an intentional killing of the victims while committing or attempting to commit Robbery and that the defendant committed another murder. In reviewing the seven possible mitigating circumstances considered by the jury, the Court finds: 1. The defendant had no significant history of prior criminal conduct; and this fact was made known to the jury in the sentencing stage of the proceedings. This is a mitigating circumstance which must be weighed against the aggravating circumstances. 2. There was no evidence that the defendant was under extreme mental or emotional disturbance when he commit-

ted the murders. In his statement, the defendant said that he had been 'smoking reifer [sic] and drinking rose wine', the day of the crimes. However, his memory for detail was good as was his ability to carry out the criminal enterprise, both before and after the murders. In addition, this defendant entered into an agreement with his co-defendant on the day of the crimes to carry out the very criminal enterprise eventually perpetrated. Upon formal request of the defendant and his counsel, the Court ordered the defendant to receive a pre-sentence examination and evaluation by the staff of the Indiana Reception and Diagnostic Center in addition to the pre-sentence report in this cause. The psychological evaluation shows an I.Q. test result that the defendant is functioning at the borderline mentally retarded range, but the impression that his intellectual functioning is considerably higher than is indicated by testing due to his setting emotional pressure or a lace [sic] of sophistication which can cause seriously depressed test scores. There was no evidence of psychosis and his memory for detail remained good. Although there is some evidence of a borderline intellectual range, his judgment about daily affairs was found to be adequate, and his overall condition cannot be said to constitute extreme mental or emotional disturbance. 3. The evidence shows that the victim Hal Fuller was 65 years of age, five feet six inches tall and weighed one hundred forty-five pounds and that Margaret Fuller was 63 years of age, five feet seven inches tall, and two hundred and sixty pounds; and that each was somewhat infirm. The victims were in their own home at the time of the offense, and did not participate in or consent to the defendant[']s conduct in any way. 4. Evidence showed that the defendant and his co-defendant acted in union in the commission of these offenses, and that the offenses were planned and agreed upon before the two defendants entered the victims['] home. Although each defendant demonstrated a penchant to participate in violent crimes, the actions of this defendant were particularly vicious. This defendant personally stabbed Margaret Fuller numerous times

(the victim had seven stab wounds in the chest, one on the forearm and one on the right hand) causing her death. This action was completed despite the victim's pleas to spare her life this defendant also stabbed Hal Fuller for the final time while he was still alive, which was instrumental in causing his death. The evidence shows beyond a reasonable doubt that this defendant intentionally killed Margaret Fuller in the perpetration or attempted perpetration of a Robbery and that he intended that deadly force he used against Hal Fuller, and eventually used such force. 5. It appears that the idea to commit these offenses did not originate with this defendant. However, it also appears that this defendant was a willing participant in these crimes. There was no evidence that this defendant was under substantial domination of his co-defendant or any other person. 6. The defendant did not file a plea of insanity nor did he file a plea alleging lack of comprehension. The defendant testified that he had consumed intoxicants and smoked marijuana on the date of the offense, but in his confession and later statements he possessed a good memory for the details of these offenses and his actions immediately thereafter. In addition, the actions taken by this defendant calculated to avoid detection and arrest in this cause, such as having his bloody clothing washed and making false statements about the vehicle of the victims which he and his co-defendant were using, show this defendant did have the capacity to appreciate the criminality of his conduct. There is no evidence of any psychosis, thought disorder or delusions; and his judgment about ordinary affairs is adequate. His intellectual range; while apparently limited, does not reach the level of a mental disease or defect. 7. The only other significant circumstance which was considered by the jury and the Court does now consider is the defendant's age, which is currently 19 years of age and 18 years of age at the time of the commission of these offenses. However, it is diminished as a mitigating factor by other factors. The defendant was not so limited that he did not appreciate the wrongfulness of his conduct. This defendant agreed to rob and kill

an elderly couple, and participated in these crimes with a viciousness and without mercy, and was instrumental in the deaths of both victims. He along with his co-defendant used and sold items taken from the victims['] house without compunction. The weapons used in the offense were from this defendant's residence and the two returned to this defendant's residence after the offenses. This defendant's willingness to participate in these actions, judge[d] in the light of his overall background and capabilities, diminishes the factor of age and background as a mitigating factor. In conclusion the Court finds beyond a reasonable doubt that the aggravating circumstances of the intentional killings of the victims while committing or attempting to commit Robbery and the Defendant having participated in the commission of two murders outweigh the mitigating circumstances stated above. Accordingly, the Court finds the jury recommendation to be proper and lawful and that the Court has a duty to follow such recommendation. The Court now enters it's findings and the reasons for the imposition of the death penalty as previously stated. The Court is, therefore, finding that the recommendation is reasonable and within the law and that the death penalty should be imposed. It is the Judgment of the Court that the death penalty be imposed and that the defendant be transferred to the custody of the warden of the Indiana State Prison at Michigan City to be confined there until further order. The Court, knowing that this is a case for automatic and expedient review by the Supreme Court of Indiana advises trial counsel to file the necessary motion to correct errors as required by law. As to the setting of a date of execution, I will do so one hundred (100) days after the final ruling of the Indiana Supreme Court provided that it is the ruling of that Court that the conviction and sentence be affirmed."

The trial court's findings are amply supported by the record. There was evidence proving beyond a reasonable doubt that Townsend and McCollum were guilty of the murders of Hal and Margaret Fuller. Further, the aggravating circumstances were proven beyond a reasonable doubt and out-

weighed the mitigating circumstances. No reasonable person could find that the death penalty in this case was arbitrarily or capriciously applied, or that it is unreasonable or inappropriate. We therefore affirm the trial court in all things, including the imposition of the death penalty.

This case is remanded to the trial court for the purpose of setting a date for the imposition of the death penalty.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.